M. M. Driggers v. The State of Florida.—Syllabus.

M. M. DRIGGERS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—ERRORS ASSIGNED WITHOUT EXCEPTIONS NOT REVIEWABLE—CHARGING IN LANGUAGE OF STATUTE—SENDING JURY OUT WHILE LAW IS READ TO COURT—REMARKS OF COUNSEL—CHARGING ORALLY—REITERATING CHARGES.

1. Where evidence is admitted in a cause without objection, and no exception is taken or reserved to its admission, an assignment of error predicated thereon can not be considered on writ of error.

2. It is not error, in a trial on a charge of murder, for the court in its charges to give the definition of justifiable homicide and manslaughter in the exact language of the statute.

3. Great latitude is allowed in the cross-examination of an interested witness to expose his bias.

4. Under our system, where juries get the law of the case exclusively from the court, it is not error to permit the jury to retire temporarily from the court room while counsel for the defense in a murder trial is reading law exclusively to the court, where no curtailment of the defendant's right of argument of the law and facts of the case to the jury is shown to have resulted therefrom.

5. Where the oral giving of a charge in a murder trial is not excepted to promptly at the time it is given, the error in giving it orally will be considered as waived, and it will not be ground of reversal on writ of error.

6. Where the substance of a requested instruction has already been given in another charge, it is not error to refuse a reiteration of it, though the requested charge be couched in different language.

7. Where an objection to remarks of counsel on the ground of abusing the privilege of argument, or other objection of similar character, is made at the trial of a cause before a jury, and no ruling of the judge thereon is shown by the bill of exceptions, or if there is an adverse ruling thereon but no exception is taken thereto, the objection will be held to have been waived.

Writ of Error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion.

*Frank W. Pope*, for Plaintiff in Error.

*William B. Lamar*, *Attorney-General*, and *A. G. Hartridge*, *State Attorney*, for the State.

TAYLOR, J.:

M. M. Driggers, the plaintiff in error, was indicted at the Fall term, 1895, of the Circuit Court in and for Bradford county for the crime of murder committed in that county, and, upon his application, for good cause shown, the venue for his trial was changed to Duval county Circuit Court, where he was tried at the Fall term, 1895, and convicted of murder in the first degree, and sentenced to death; and from this sentence he brings writ of error.

There are twenty-six assignments of error. The first, second, third, fourth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, seventeenth, eighteenth, nineteenth and twentieth of these assignments of error we can not

consider for the reason that no objections were inter-
posed to the introduction or admission of any of the
evidence, the admission of which is made the basis of
said assignments, and there was, consequently, no
ruling of the court thereon, and no exceptions were
taken or reserved to the admission of any of it. Glad-
den vs. State, 12 Fla. 562; Gallaher vs. State, 17 Fla.
text 380; Shepherd vs. State, 36 Fla. 374, 18 South.
Rep. 773. The proof shows that the deceased, when
killed by the defendant, was riding a mule on a public
road that passed immediately in front of the store of
defendant; and that he was shot by the defendant
while sitting on his mule in front of defendant's store
with a bag of clothing in front of him on his saddle.
There was proof also that the wife of deceased got to
his dead body where it fell from the mule near defend-
ant's store among the first who arrived after the shoot-
ing, and that she found an open pocket knife lying in
his partly opened hand as he lay dead upon the
ground. There was proof also to show that this knife
was not the property of deceased, but belonged to one
Adolphus Carver who, on the day of the tragedy,
loaned it to the defendant at defendant's request, to
be kept by him for a day or two. The wife of deceased
also testified that when she came up to the scene of
the tragedy a few minutes after the shooting, the de-
fendant asserted to her, calling on his little son for
corroboration, that he had killed the deceased in self-
defense; that deceased had dismounted from his mule
and was advancing upon him with the knife, and that
defendant called her attention to the knife found in
the hand of deceased as proof of his assertion. The
proof shows that the defendant and his immediate
family were the only persons at the scene of the trag-

edy for fifteen or twenty minutes after its occurrence,
and until the wife of the deceased came up. It is
further shown that the mule that the deceased was
riding when shot went towards the house of deceased
immediately after the deceased fell from his back, and
was caught by deceased's wife between her house and
defendant's store, with the saddle still on it that de-
ceased was riding when shot, and that this saddle was
all covered with fresh blood, as well as the back of the
mule, that evidently came from the wound of deceased.
This saddle after being identified as the one that de-
ceased was riding when shot was admitted in evidence
over the defendant's objection, and this ruling is the
fifth assignment of error. There was no error in this
ruling. The exhibition of the saddle in evidence
tended to corroborate the evidence as to its bloodied
condition immediately after the deceased was shot
from it, and it tended to show that deceased was in
the saddle on his mule when he was shot, and this,
coupled with the assertions of the defendant to the
wife of the deceased, that the latter was dismounted
from the mule and advancing on him with the knife
found in his hand, and with the further fact that this
story of the assault by the deceased with the knife
was subsequently disavowed and repudiated by the
defendant at the trial, all tended to show that the
knife found in the hand of deceased was intentionally
placed there by the defendant for the purpose of cov-
ering his crime, and to give to it an appearance of
justifiable homicide on his part. From this aspect of
the case we think an exhibition of the bloody saddle
became pertinent and proper, and that it was rightly
admitted in evidence.

The knife found in the hand of deceased was also admitted in evidence, over the defendant's objection, after it had been fully identified as being the one so found, and also as being the one loaned by Adolphus Carver to defendant on the day of the homicide, and this ruling is assigned as the sixth error. For the same reasons that we hold the saddle to have been properly admitted we think the knife, also, was pertinent, and that there was no error in its admission.

The evidence showed that the deceased was sitting on his mule when shot, and that the defendant stood on the ground when he did the shooting. The fatal wound was in the upper end of the breast bone, and in the throat and neck, and the shot were shown to have ranged upwards at an angle of about forty-five degrees. Simeon Driggers, a son of the defendant, who testified to having been present at the shooting, swore that when deceased was shot he was leaning over on his mule apparently reaching down after the defendant's gun that was leaned up against the storehouse, with its but resting on the ground. On cross-examination the State Attorney asked him if he was positive that the deceased was leaning over, and upon his responding in the affirmative, the further question was asked by the State: "Is that as true as everything else you have sworn to upon this stand?" This question, after it had been answered affirmatively, was objected to upon the broad ground that it was improper, but the court ruled that inasmuch as it had already been answered before being objected to, the court can not see any harm in it. To which ruling exception was taken, and it constitutes the sixteenth assignment of error. We discover no error in the ruling or in the permission of the question. It was

propounded upon cross-examination where great latitude is allowed in exposing the bias of an interested witness. It tended to make the witness intensify his willingness to affirmatively assert a fact that other circumstances in proof tended strongly to negative, and was a legitimate expose of the witness' bias on defendant's behalf, and the answer to it tended to discredit the whole of the witness' evidence in the case.

After the defendant had closed his defense, in which he had introduced testimony tending to show that he had shot the deceased while the latter was leaning over and reaching down to get the defendant's gun that was leaning up against his store for the purpose of shooting the defendant with it, the State Attorney in rebuttal introduced R. F. Bowden, sheriff of Duval county, who testified that he had overheard a part of a conversation between the defendant and a newspaper reporter in the jail at Jacksonville; the State Attorney asked Bowden the following question: "Did Mr. Driggers say that he had shot Mr. Dowling because Dowling was bulldozing him?" The defendant objected to this question on the ground that the witness did not hear and could not state all that the defendant had said on that occasion, but the court overruled the objection, and this ruling constitutes the twenty-first and twenty-second assignments of error. The witness' answer to this question was: "Mr. Adams (the newspaper reporter) asked him why he shot him, and he said the reason he shot him was because he was trying to bulldoze him." There was no impropriety in the admission of this evidence. It is true that the general rule is, that all that an accused says to another or in his hearing in connection with

admissions upon his part of the commission of crime must be given along with that that incriminates him, but the question here objected to sough to elicit a complete, separate and distinct admission by the defendant, and the whole of what he said in the hearing of the witness upon the point inquired about was repeated by the witness. It was strictly in rebuttal of the defendant's evidence, and there was no error in its admission.

After the testimony in the case had been closed, the State Attorney requested that the jury be allowed to retire from the court room while one of the counsel for the defense was reading law to the court, which request was granted by the court, and to which exception was taken, and it is assigned as the twenty-third error. Under our system the court is the exclusive judge of the law in every case, and the jury must get the law of the case exclusively from the court, and must be governed by such statement of the law as the court shall give them in their application of the facts. The statement in the bill of exceptions before us shows that the attendance of the jury in court was temporarily excused while the defendant's counsel was reading law exclusively to the court. Neither the defendant nor his counsel were in any way curtailed in their argument of the law and the facts to the jury, and the ury were not debarred from the benefit of any law applicable to the case as given them by the court, and we can not see that the temporary absence of the jury from the court room while the defendant's counsel was reading law exclusively to the court deprived the defendant of any substantial right, especially when the law of the case was subsequently fully charged upon.

The court in its second charge to the jury gave them, in the exact language of our statute (sec. 2378 Rev. Stat.), the definition of justifiable homicide. Exception is taken to this, and it is assigned as the twenty-fifth error. There was no error here. The charge complained of did nothing more than to give the statutory definition of justifiable homicide, and the court, in thus defining it, would have erred had it substantially changed the language of the statute in any way.

The twenty-fourth and twenty-sixth assignments of error are based upon the refusal of the court to grant the defendant's motion for a new trial. Most of the grounds of this motion for new trial have already been discussed in disposing of the specific assignments of error predicated thereon, and we will now dispose of such of the grounds of the motion as have not been discussed already. The judge, after delivering his charges on the law of the case in writing, instructed the jury orally as to their duty in having their verdict specify the degree of murder, or of manslaughter. The fact of this portion of the charge given orally is made a ground of the motion for new trial. No exception was taken to the *manner* in which this part of the charge was given at the time it was given. In the case of Hubbard vs. State, 37 Fla. 156, 20 South. Rep. 235, it was held that although the provisions of section 2920 of the Revised Statutes were mandatory requiring the court to charge wholly in writing in capital cases, and that an oral charge in such a case would be ground of reversal if exception thereto was properly and seasonably taken, that still, if the *manner* of giving the charge is not excepted to promptly at the time it is given orally, the error will be held to have been waived thereby, and it will not be ground for reversal

on writ of error. The reasonableness of such a rule is self-evident. When the court inadvertently proceeds in such a case to deliver a charge orally, and exception to the manner of its delivery is then promptly taken, the error can at once be rectified by reducing the oral charge to writing. Southern Express Co. vs. Van Meter, 17 Fla. 783, S. C. 35 Am. Rep. 107.

The defendant requested the court to give the following charge: "2d. If you believe from the evidence that the deceased in a conversation with defendant, told defendant to shut up and go home, and that he meant it, and that deceased was angry when he said it, and that defendant did shut up and go home, and that after that defendant said to his wife, 'I am going to have deceased pay me what he owes me, and after this he will go his way, and I will go mine,' and that defendant wrote to deceased to come and settle with him, and that deceased went to defendant and paid defendant an account which he owed him, and started to leave, and that defendant said to deceased, 'there is $5 borrowed money which you haven't paid me,' and that deceased said, 'I thought I had paid that,' and that defendant said, 'no, you have not paid it,' and that deceased replied, 'I believe I have paid it, but damn you, I can pay it again,' and thereupon paid it and left, and that thereafter deceased saw the defendant and E. F. Chase and Tom Dekle in the road, and that deceased requested Chase to buy him some writing paper at Lake Butler, and that defendant said or did nothing offensive to deceased; that deceased then went on to his home, with Dekle, and left his home to see about some washing, and was returning or going from said house, and while so returning or going, left the direct and usual route and went out of his way,

and rode up to defendant's store; and if it further appears from the evidence that deceased had no particular business there, and that he stopped in front of defendant's store, and near where defendant was working, and that deceased said to defendant, 'I will bulldoze you or kill you, you d—— son of a b——,' at the same time making a motion as if to get off his mule and to reach a gun, and that there was a gun nearer to the deceased than to the defendant, which defendant had placed against the side of the house; and that deceased made a motion in the direction of the said gun, as if to get it, and that thereupon the defendant rushed to said gun, and obtained it, and under the belief that deceased intended to kill him, or do him great bodily harm, shot the deceased, then your verdict should be not guilty." This charge, we think, was objectionable within itself, because by it the jury would have been instructed that if various hypotheses of fact therein stated "*appeared*" from the testimony, they should acquit the defendant, whether the jury believed those facts or not. But, aside from this, the pith of the requested charge is, that the jury should acquit the defendant if they believed from the evidence that he fired the fatal shot under the belief that the deceased was about to kill him, or do him great bodily harm. This phase of the law had already been amply charged by the judge at defendant's request, and it was not error to refuse to reiterate it in the form presented by the refused instruction. Pinson vs. State, 28 Fla. 735; Bryant vs. State, 34 Fla. 291.

Another ground of the motion for new trial is, that the court erred in not defining manslaughter. We find that this assignment has no basis in fact, as the judge in his fifth charge in writing defined manslaugh-

ter in the exact language of the statute. Section 2384 Rev. Stat. And the giving of this statutory definition of manslaughter is also assigned as error. What we have said above in reference to the giving of the definition of justifiable homicide in the language of the statute applies also to this exception, and disposes of it in favor of the correctness of the charge.

Accompanying his motion for new trial the defendant filed various affidavits of different persons asserting that the State Attorney in his closing address to the jury had made various improper remarks and arguments to the jury that had been objected to by the counsel for the defense, and that in some of said statements he had been stopped by the judge, and that others of them he had himself retracted, etc. No rulings of the court appear by the bill of exceptions to have been made upon any objections made to the remarks of the State Attorney, and no exceptions were taken to any such rulings, if any were made. In Willingham vs. State, 21 Fla. 761, it was held that "where an objection to remarks of counsel as violating the right or privilege of argument, or other objection of a similar character, is made in the trial of a cause before a jury, and no ruling of the court thereon is shown by the bill of exceptions, the objection will be held to have been waived. Likewise, if an adverse ruling is shown, but no exception thereto." Jenkins vs. State, 35 Fla. 737, 18 South. Rep. 182.

The defendant while testifying as a witness on his own behalf stated that at the time of the tragedy after the deceased rode up to his store on his mule, the latter cursed him and reached over from his mule, as he thought, to get defendant's gun leaning near, against

the store; that he was looking at deceased at the time, and he (defendant) saw the gun, and that after seeing the gun he (defendant) knew nothing more; that he could not tell how he got shot; whether the gun shot him, whether he shot himself, or whether he shot him, he could not tell; that the excitement overcame him entirely, and that instantly he (defendant) was standing off three or four steps from there, and saw the mule off about fifty yards going along. On the motion for new trial the defendant produced several affidavits made by his wife, himself and his brother, in which they swear in substance that the defendant is subject at times of excitement to a total loss or palse of consciousness or memory, and that during such spells he does not seem to realize or remember any occurences whatever, and that they did not know until after the trial that it was material and important to have informed the defendant's counsel of the existence of such idiosyncrasy on his part, or that it would be material to have proved it at the trial, and that they did not inform his counsel of it until after the trial. The phase of the motion for new trial based upon these affidavits is that of newly discovered evidence. The affidavits produced do not in any respect bring the case within the rule authorizing new trials because of newly discovered evidence. In the first place, they show that the new facts proposed to be brought forward were all along well known to the defendant, and that it was simply laches or ignorance that prevented their being detailed at the trial, and besides, the new facts proposed would be merely cumulative or corroborative of the testimony of the defendant himself at the trial, as given above, relative to the lapsed condition of his mind and memory during the shooting of

the deceased. Howard vs. State, 36 Fla. 21, 17 South. Rep. 84. There was no error in the refusal of the motion for new trial upon this ground.

The only remaining grounds of the motion for new trial not disposed of are, that the verdict was contrary to law and to the evidence in the case. The voluminousness of the evidence adduced precludes any rehearsal of it here, when no good purpose could be subserved thereby. We have considered it carefully, and it is enough to say here that it amply makes out and sustains the verdict found, of murder in the first degree. The motive for the killing was fully shown, and was nothing more than an unreasoning exhibition of self-assertiveness and self-will on the defendant's part. He got provoked on the morning of the day of the homicide because the deceased went as surety upon an appearance bond of another party whom the defendant was prosecuting for some criminal offense; he brooded over it all day, and with deliberate premeditation and preparation, and without any sort of excuse or justification slays the deceased while on a public highway as he rode by his house on a peaceful and proper domestic errand, and then at once proceeded with cool deliberateness to prepare in the hand of the dead body of his victim false evidence to conceal his crime. The law of the case was fully and very liberally given in the defendant's favor, and finding, as we do, that the verdict returned is fully sustained both by the law and facts of the case, and being unable to discover any error in the record, the judgment of the court below is affirmed.