STATE *v.* PETER MANNING.

January Term, 1903.

Present: TYLER, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed February 25, 1903.

*Rape—Evidence—Instructions—Reading evidence to jury— New trial—Newly discovered evidence—Character of— Sufficiency.*

On the question of the genuineness of a letter, evidence that certain statements therein are false, is admissible, though such statements are merely incidental to the part relied upon as evidence.

It was not error to charge that all evidence in the case was "real" evidence to be considered and weighed by the jury.

That the respondent was not, at the time when the crime was committed, at the place where he claims to have been, may be considered as evidence of his guilt.

It is in the discretion of the trial Court to grant or deny a request of
the jury to have certain evidence read; and if granted, it is suffi-
cient if the Court complies with the request as made.

A new trial will not be granted on the newly discovered evidence of
an apparently unreliable witness.

Nor will a new trial be granted, even in a criminal case, upon newly
discovered evidence to impeach the general reputation for truth
and veracity of one of the State's witnesses, when the impeaching
and sustaining evidence are of about equal weight.

A supplemental petition for a new trial, filed by leave of this Court,
is denied for insufficiency of the newly discovered evidence (*q. v.*)
upon which it is predicated.

INFORMATION FOR RAPE. Plea, not guilty. Trial by
jury at the June Term, 1902, Windsor County, *Haselton, J.,*
presiding. Verdict and judgment, guilty. The respondent
excepted. A petition and a supplemental petition for a new
trial based on newly discovered evidence, were heard with the
exceptions.

*Gilbert A. Davis* for the respondent.

*H. H. Blanchard,* State's Attorney, for the State.

TYLER, J. Information for rape upon a girl under six-
teen years of age. The State introduced evidence tending to
show the commission of the crime. The respondent denied
the charge, and produced evidence tending to show that at the
time alleged he was sick at a house three miles distant from
the place where the crime was laid. He also introduced two
letters, which purported to have been written by the prosecu-
trix, and which the respondent testified he received by mail
while he was in prison, after a former trial of the case. They
stated, in substance, that the writer was sorry the respondent
was in prison; that she hoped he would not blame her for it;
that he was not the man who assaulted her, but that it was a
stranger who resembled him; that she told her grandmother,

with whom she lived, that it was the respondent, because her grandmother had threatened to whip her if she did not tell who it was, and that her father had made a like threat if she told her story differently; also that her grandmother had told her that, if the respondent got out of prison, he would kill her. These letters were in contradiction of her testimony, and it was a material question whether they were genuine, or were manufactured for the purpose of the defense. In rebuttal she denied having written the letters, and disclaimed all knowledge of them.

As bearing upon this question, the State's Attorney, subject to the respondent's exception, was permitted to inquire of the prosecutrix and of her father and grandmother whether the threats and statements mentioned in the letters were made to her, and the witnesses answered that they were not made.

I. The letters may have been genuine, written by the prosecutrix for the reasons assigned in them; or she may have written them, and through fear of or favor for the respondent, fabricated the story about the threats; or they may have been forged. These were questions for the jury. It was clearly competent for the State to prove in rebuttal that the threats were not made, in which case one of the other alternatives must have existed, for the prosecutrix could not have truthfully written about threats that had never been made. The respondent's counsel argues that the material parts of the letters were what related to the vital question in the case—the respondent's identity with the man whom the prosecutrix had charged with the crime; that the threats were not claimed by the respondent as evidence, and that they came into the case only as an incident. But the letters were put in by the respondent as evidence, and, while it is true that what was material to his defense was what they contained in respect to his

identity, the State claimed that they were not genuine, but forged. There had been a trial of the case prior to the appearance of the letters, in which it is presumable that the prosecutrix had charged the respondent with the crime, as she did in the last trial; and her evident purpose in writing the letters, if she wrote them, was to exonerate the respondent, and give reasons for having falsely accused him. If the reasons assigned never existed, the motive for making a false accusation never existed, and this bore upon the genuineness of the letters. The evidence objected to was properly admitted. Steph. Dig. Ev. Art. 9.

II. In argument the State's Attorney's assistant referred to certain evidence introduced by the State as "real evidence," and the respondent's counsel requested the Court to instruct the jury that there was no such legal classification, with which request the Court complied, and instructed them that all evidence in the case was real evidence; that nothing comes into a case except what is real evidence; but that there was no such classification as "real" or "unreal" evidence, and said: "All the evidence before you is real evidence, to be considered by you, and weighed for what it is worth in producing an effect upon your minds, one way or the other. Everything that is not real evidence is not evidence at all, and is kept out of the case." To this part of the charge the respondent excepted, but we think it contains no error. It was, in effect, that all the evidence that had been admitted was to be considered and weighed for what it was worth.

III. The part of the charge which is recited in the exceptions upon the subject of *alibi* was favorable to the respondent, and was a correct statement of the law: "In going along with a consideration of the case you may have occasion to consider the question of an *alibi* in another connection. That

is, if you find that the respondent was not at home that fore-
noon, * * * it does not necessarily follow that he com-
mitted this crime; it does not necessarily follow, if he was not
at home, that he was where the testimony of the witnesses on
the part of the State tends to show he was, and that he com-
mitted this crime. But, * * * if you find that this
claimed *alibi* was false,—that is, that he was not at home that
forenoon, as has been claimed by him,—if you find that is a
false or fictitious defense, that is a circumstance you have a
right to treat as evidence tending to show his guilt; but the
weight to be given to it is wholly for you to determine."

To the other part of the charge there was no exception,
and we may assume that the jury were instructed that they
must find beyond a reasonable doubt that the *alibi* was false
and fabricated, and that the respondent was in fact at the
place where the crime was committed, as alleged in the in-
formation. That the Court had previously given instructions
upon the subject of *alibi,* is apparent from his introductory
remark in the part quoted, that the jury might have occasion
to consider the subject "in another connection." If there was
error in the part of the charge not recited, or in omission to
charge, the respondent should have brought it upon the record.
In the part recited no error appears.

IV. After the case had been given to the jury, they re-
turned to the court-room, and asked to have the direct testi-
mony of two witnesses read to them, and the request was
granted. The respondent's counsel requested that the cross-
examination of the two witnesses be also read, which was re-
fused. It was discretionary with the Court whether to grant
or deny the jury's request. It was sufficient that he com-
plied with it as made. The respondent had no legal right to
have more read than the jury requested.

*There must be judgment upon the verdict, sentence, and execution thereof.*

---

## Petition for New Trial.

This petition is based upon two grounds; 1st, that a newly discovered witness, Rider, will testify that he mailed a letter, written by the prosecutrix and addressed to the respondent, about the time the latter claims to have received the one in question; 2nd, newly discovered evidence to impeach the general reputation of Mrs. Fosby, the grandmother of the prosecutrix, for truth and veracity.

As the letter was placed in the hands of the respondent's counsel who defended him in the first trial, in March last, and as Mrs. Fosby had been an important witness in that trial, it would seem that all this evidence might, with reasonable diligence, have been discovered and used at the second trial. This is especially true in respect to Rider, in view of the facts that it is stated in the letter that it would be mailed by some person without the knowledge of the writer's father and grandmother, and that Rider was boarding at the house where, and at the time, the letter was claimed to have been written, so that he was obviously a person to be seen and inquired of at once in order to supply this important piece of evidence; yet it appears that his statement to the respondent's wife and his affidavit were not obtained until the August next after the June term when the case was last tried. It is true that he was in an adjoining county most of the time, but not beyond easy reach.

But, apart from all question of due diligence, the testimony of Rider is unreliable. In August, Mrs. Manning, the respondent's wife, obtained his signature to a writing which

stated that the prosecutrix requested him to mail a letter, and that he told her he would, and in September he made affidavit, on application of respondent's counsel, that upon the prosecutrix' requesting him to mail a letter one evening, he told her to put it in his coat pocket when she finished it; that he found it there the next morning, and mailed it, and that it was addressed to the respondent.

In a subsequent affidavit, taken by the State, Rider denied having mailed any letter for the prosecutrix, but says he saw her writing, and that she told him she was writing to her aunt about finding her a place to work. This is also, in substance, the affidavit of the prosecutrix.

We have carefully considered these affidavits and the statements made by Rider to Mrs. Manning and to others, and the circumstances in which they were made, and are of the opinion that any testimony that Rider might give in a new trial of the case would be of but little, if any, value.

A considerable amount of testimony has been taken by the respondent and the State bearing upon the question of Mrs. Fosby's reputation for truthfulness. The impeaching and the sustaining testimony are of about equal weight. Mrs. Fosby is evidently a poor and obscure person, with no decided reputation in this respect; besides, she testified on two trials of the case, and no attempt was made to impeach her.

While it is the rule, as stated in 1 Bish. Crim. Proced. § 1273, that new trials should be awarded more freely in criminal than in civil cases, here the newly discovered evidence is not so conclusive and decisive in its character as to raise a probability of a different result on another trial. *State* v. *Doherty,* 73 Vt. 389, 50 Atl. 1113.

Under a supplemental petition, which the respondent has been allowed to file, he presents the affidavits of Harry Dyer,

Alta Dyer and William McGibbon, which tend to show statements made by the prosecutrix out of court to the effect that the respondent did not commit the crime charged. The three affidavits are not in accordance with each other in respect to the conversations that led to the alleged statements nor in respect to the statements themselves. The prosecutrix, in her affidavit, denies that she made any of them; if made, it is remarkable that the affiants did not disclose them to the respondent's counsel, or to his family who lived four or five miles from them. On the contrary, though they all knew that these statements were in straight contradiction of what the prosecutrix had testified to on one trial of the case in the County Court, and knowing that she was going as a witness to the second trial, the testimony of the officer who took the prosecutrix away from Dyer's house to attend that trial tends to show that Mr. and Mrs. Dyer both denied that they knew anything about the case. They deny that they talked with the officer; but, on the whole, we think this testimony, in connection with that attached to the original petition, does not warrant the granting of a third trial.

*Petition dismissed.*