NATHAN BARTON, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion filed Nov. 21, 1916.

1. Where an objection has been sustained to a question but subsequently during the trial the question was answered in effect by the witness, even if there was error in the previous ruling, it was cured by the subsequent admission of the testimony so excluded.

2. Alleged errors in the admission or rejection of testimony which do not weaken the effect of the admitted evidence, and that do not reach the legality of the trial itself, will not be considered ground for reversal where the evidence leaves no room for doubt of the defendant's guilt.

3. Evidence of declarations or acts of a defendant, prior to the commission of a crime by him, in his own favor or interest, falling within the class designated as "self-serving declarations and acts" and forming no part of the res gestae, is not admissible.

4. In lawfully defending himself a man may take life when as a reasonably prudent person he has reasonable ground to apprehend a design to commit a felony on him or to do him some great personal injury and that there is imminent danger of such design being accomplished, though as a matter of fact there was no actual danger; but if he wrongfully occasions or brings about the necessity for his action, though as a prudent man he may have reasonable ground to apprehend a design to commit a felony on him or to do him some serious personal injury and that there is imminent danger of such design being accomplished, he can not lawfully kill and justify his conduct on the ground of self-defence.

5. An objection to a portion of a charge stating an abstract proposition of law on the ground that it is misleading may be removed by another portion covering the ground so fully as to leave no room for a misdirection of the jury.

6. In a prosecution for murder, an instruction asserting the proposition that, in order to justify a killing under a claim of self-defense, the slayer must have resorted to all reasonable means at his command, consistent with his own safety to avoid the necessity of taking human life, is not erroneous, because not modified so as to bring, or limit such means to the knowledge of the defendant, especially in view of other instructions conveying this meaning.

7. Where charges are expressly confined to offenses of a less degree than the one found by the verdict, and there is nothing in the charges that could have influenced the jury to misin-

terpret them or to misapply the evidence as to higher offenses included in the indictment, and there is evidence to sustain the verdict found for a higher offense, and there is no evidence to warrant a verdict of guilty of an offense of a lower degree, it is not material to consider whether the charges were legally accurate as applied to the offences of a lower degree than the one found by the verdict.

8.  It is within the sound judicial discretion of the trial court to grant a request of the jury to have read to them by the court stenographer the shorthand notes of the testimony of particular witnesses, for the purpose of refreshing their memories, and such proceeding is not objectionable on the theory that it gives undue prominence to the testimony of such witnesses. And where it is not contended that such notes were inaccurate or incorrect, an appellate court will not interfere with the exercise of such judicial discretion by the trial court in granting the request of the jury and permitting such shorthand notes to be read.

9.  It is not violative of the provisions of Section 3990 of the General Statutes of 1906, requiring that the charge of the court in capital cases shall be wholly in writing, for the trial court, in granting the request of the jury to have the shorthand notes of the testimony of certain witnesses read to them, to state to the jury orally that they must decide the case upon the testimony as they remembered it as given by the witness on the stand and that the shorthand notes of such testimony was read to them by the stenographer for the purpose of refreshing their memory as to the testimony of such witnesses, and that the reading by the stenographer was not evidence for their consideration. Such oral statement by the trial court is simply in the nature of a cautionary direction or instruction.

Writ of Error to Circuit Court, Taylor County; M. F. Horne, Judge.

Judgment affirmed.

*Davis* & *Diamond,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

SHACKLEFORD, J.—Nathan Barton was indicted for the crime of murder in the first degree, tried before a jury, convicted of the crime of murder in the second degree and sentenced to confinement at hard labor in the State prison for the period of his natural life.

The first twenty assignments are based upon the sustaining of objections interposed by the State Attorney to certain questions propounded by the defendant to witnesses introduced on behalf of the State upon the respective grounds that such questions were not in cross of anything brought out on the direct examination and that they sought to introduce matters irrelevant and immaterial to the issue being tried. We have given all of these assignments which have been argued before us our careful examination and are of the opinion that no reversible error has been made to appear to us in any of the rulings of which complaint is made. It would seem that the objections interposed by the State Attorney to such questions in the main were well founded and that the rulings of the trial court thereon were proper. Even if it be conceded that some of the testimony sought to be elicited by these questions of the defendant was improperly excluded, we find that such testimony which might have been admissible was as a matter of fact later on admitted without objection. This being true the errors, if any, so committed were cured and assignments of error based upon such rulings must fail. See McCall v. State, 55 Fla. 108, 46 South. Rep. 321, and prior decisions of this court there cited, and Owens v. State, 65 Fla. 483, 62

South. Rep. 651. The discussion in Andrew v. State, 62 Fla. 10, 56 South. Rep. 681, wherein other decisions of this court are cited, is also instructive, as is likewise true of Rhodes v. State, 65 Fla. 541, 62 South. Rep. 653.

The eighteenth to the twenty-second assignments inclusive are expressly abandoned by the defendant. The twenty-third assignment is as follows: "The court erred in sustaining and not overruling the objection of the State to the following question propounded to witness N. M. Barton on his redirect examination: 'What was the bedding worth?'"

The defendant testified in his own behalf on his direct examination to the effect that on the night of the tragedy the deceased came twice to the home of the defendant, only about ten minutes between the two visits. and demanded of the defendant that he go to Mr. Mixon's place and settle a little account for which it seems from testimony introduced by the State the deceased stood responsible and which amounted to a dollar and a half, and upon the defendant stating that he could not settle such account for the reason that he did not have the money the deceased cursed the defendant in the presence of the latter's wife and children, using vile epithets, and threatened to kill the defendant that night, the deceased being armed with a pistol at the time. After making such threats the deceased walked off, whereupon the defendant, according to his own testimony, got his shot gun, walked to Mr. Gardner's store, only a short distance away, and called to the deceased to meet him half-way, in response to which the deceased came out of such store, according to the testimony of the defendant, with a gun in his hand, cursing the defendant, whereupon the defendant shot and killed the deceased, claiming that he believed that his own life was at stake. On his cross-

examination, the defendant stated that at the time he called to the deceased to meet him half-way he did not tell the deceased for what purpose he, the defendant, wished the deceased to meet him, or that he, the defendant, was armed.   On the re-direct examination of the defendant, the following proceedings took place:

"Redirect Examination.

" 'My purpose in going over there was—well, Mr. Mason was using our bedding at that time and my purpose in going over there was to see if it would be satisfactory for him to take what he was using of mine for a settlement and try to make friends.   I went over to offer the bedding.'

"Thereupon the counsel for the defendant propounded to defendant on his redirect examination the following question: 'What was the bedding worth?' But to the said question as propounded the State, by its attorney did then and there object on the ground that it was immaterial and irrelevant and the said Judge did then and there sustain the said objection and refused to allow the said question to be answered, to which ruling the defendant then and there excepted."

·No error is made to appear in this ruling.   The defendant had not informed the deceased of the purpose for which he wished the deceased to meet him half-way or that the defendant wished to offer the deceased the bedding of the defendant which the deceased was using in settlement of the amount "and try to make friends." Such purpose remained within the defendant's breast undisclosed to the deceased, therefore the statement by the defendant on the witness stand of such undisclosed purpose clearly falls within the class designated as "self-

serving declarations and acts" and forms no part of the *res gestae,* See Fields v. State, 46 Fla. 84, 35 South. Rep. 185; West v. State, 53 Fla. 77, 43 South. Rep. 445; Jenkins v. State, 58 Fla. 62, 50 South. Rep. 582. This being true, the value of the bedding was immaterial, even if the defendant had been shown to have possessed the requisite qualifications to testify as to such value.

The twenty-fourth and twenty-fifth assignments are as follows:

"24th.    The court erred in charging the jury of its own motion as follows: 'A person relying upon self defense to justify a homicide must himself be reasonably free from fault in the inception of the difficulty in which the homicide may be committed and it must be necessary either actual or apparent, to resort to the means used in the particular instance to protect his life or person from imminent danger either real or apparent. A person cannot by his own wrongful act or conduct provoke or bring about a difficulty with his adversary and having wrongfully provoked or brought about a difficulty act under a necessity arising or appearing during such altercation and kill his adversary and justify such homicide under a plea of self defense.' "

"25th.    The court erred in charging the jury of its own motion as follows: 'Before one not reasonably free from fault in the inception of the difficulty in which the homicide may have been committed he must have honestly and in good faith declined combat and retired from the difficulty or so attempted to retire as to fairly make it appear that he had changed his mind and was no longer the aggressor while a person reasonably free from fault is under no obligation in law to retreat but may act upon the necessities of the occasion as they may arise.' "

The defendant admits in his brief that "This charge (upon which the 24th assignment is based) probably contains correct abstract propositions of law," in which admission we concur, but the defendant contends "that the propositions contained therein have no application to the facts of this cause." We are of the opinion that the defendant has failed to sustain this contention. A discussion thereof would seem to be unnecessary. No authorities are cited by the defendant in support of the twenty-fifth assignment and his reasoning has failed to convince us that the trial court committed error in giving that portion of the charge upon which this assignment is based. See the discussion in Kennard v. State, 42 Fla. 581, 28 South. Rep. 858, and King v. State, 54 Fla. 47, 44 South. Rep. 941.

The twenty-sixth assignment is based upon a portion of the general charge which defines and relates to the crime of manslaughter. As we held in Jordan v. State, 50 Fla. 94, 39 South. Rep. 155, "Where charges are expressly confined to offenses of a less degree than the one found by the verdict, and there is nothing in the charges that could have influenced the jury to misinterpret them or to misapply the evidence as to higher offenses included in the indictment, and there is evidence to sustain the verdict found for a higher offense, and there is no evidence to warrant a verdict of guilty of an offense of a lower degree, it is not material to consider whether the charges were legally accurate as applied to the offenses of a lower degree than the one found by the verdict." To the same effect is our holding in Padgett v. State, 64 Fla. 389, 59 South. Rep. 946, Ann. Cas. 1914 B 897. This assignment must necessarily fail.

The twenty-seventh assignment, which is also based upon a portion of the general charge, is so lightly urged

before us that we would be justified in treating it as having been abandoned. Suffice it to say that no error in the giving thereof has been made to appear to us.

The only two remaining assignments which are urged before us are the 28th and 29th, which are as follows:

"28th. The court erred in allowing the reading by the stenographer to the jury of the stenographer's notes of the testimony of witness J. F. Dees."

"29th. The court erred in charging the jury orally and not in writing as to the weight the jury should give to the reading by the stenographer to the jury of the stenographer's notes of the testimony of witness J. F. Dees."

The bill of exceptions dicloses the following proceedings:

"The said cause having been submitted to the jury by the court under its charges the said issue in said case and the said jury having retired to their jury room to consider their verdict, thereafter, on, to-wit; On the 31st day of March, 1916, the jury came into court, and the defendant being present with his counsel and the State Attorney being in court the said Jurors of the Jury in said cause were called and all answered to their names and thereupon the said jurors requested that one of the witnesses namely: J. F. Dees, a State witness be recalled. The State consented to the recalling of such witness but the defendant objected to the recalling of any of the witnesses unless all of the witnesses be recalled and all the testimony retaken.

"The court thereupon on its own motion, said that the stenographer could read the testimony of J. F. Dees from notes taken by the stenographer if the jury requested it to which the defendant then and there objected and the

objection being overruled by the court the defendant then and there excepted.

"The jury then requested that the evidence of J. F. Dees be read to them by the stenographer.

"The court thereupon orally and not in writing called the attention of the jury to the charge of the court that the jury was to find the facts of the case from the evidence and that alone which was given by the witnesses and admitted by the court during the taking of the evidence in the case, to which the defendant then and there excepted.

"The stenographer then read, at the request of the jury, the testimony of J. F. Dees from the notes of the stenographer taken during the trial and after reading the testimony of the witness Dees by the stenographer the court said to the jury orally and not in writing that they must decide the case upon the testimony as they remembered it as given by the witnesses on the stand and that this testimony was read to them only for the purpose of refreshing their memory as to the testimony of such witness, and that the reading by the stenographer was not evidence for their consideration and that they were only to consider testimony given by witness during the taking of the evidence to which instruction as given the defendant then and there excepted."

As is said by Judge FREEMAN in a note on page 359 of 81 Amer. St. Rep., the same being appended to the case of Padgitt v. Moll, 159 Mo. 143, 60 S. W. Rep. 121, 81 Amer. St. Rep. 347, 52 L. R. A. 854, which case is cited and relied upon by the defendant: "The decisions concerning stenographers' notes as evidence present an incongruous mass of material, from which it seems difficult, if not impossible, to evolve any general rule, unless, perhaps, it is that such notes are not ordinarily admissible in evidence, for any purpose, outside of prov-

ing what an absent or deceased witness said at another or former trial, except by authority of law, that is, by virtue of some statute."

It will be observed in the instant case that the portion of the stenographer's notes read by him to the jury were not introduced as evidence, the trial judge expressly stating to the jury that the "reading by the stenographer was not evidence for their consideration." We have examined all the authorities cited to us by the respective counsel, including the case of Padgitt v. Moll, *supra,* as well as others, practically all of which will be found collected in the opinion rendered in the case of State v. Perkins, 143 Iowa 55, 120 N. W. Rep. 62, 21 L. R. A. (N. S.) 931, and in the excellent note appended thereto on page 931 of 21 L. R. A. (N. S.). The authorities are undoubtedly conflicting. The Missouri court in the case of Padgitt v. Moll, *supra,* held that: "It is error to require the stenographers' notes of the evidence to be read to the jury against the objection of counsel, where his duties are merely to take the evidence, objections, and exceptions, and to preserve them for future use."

While the Iowa court held in State v. Perkins, *supra,* that: "The jury may, in a criminal case, have read to them the shorthand notes of the testimony of particular witnesses, for the purpose of refreshing their memories, and such proceeding is not objectionable on the theory that it gives undue prominence to the testimony of such witnesses; at least, where the transcribed notes are, by statute, made a part of the record."

We shall not undertake an analysis of the different cases or to point out the variations in the statutes prevailing in the respective jurisdictions, or even to cite all the cases which we have examined, as they may be readily found in the opinion rendered in State v. Perkins, *supra,*

and the note appended thereto, as we have already said. We are of the opinion that the controlling principle is well stated in State v. Manning, 75 Vt. 185, 54 Atl. Rep. 181, as follows: "It is in the discretion of the trial court to grant or deny a request of the jury to have certain evidence read; and if granted, it is sufficient if the court complies with the request as made." See also the reasoning in the opinion rendered by Mr. Justice COBB in Strickland v. State, 115 Ga. 222, 41 S. E. Rep. 713, and also in the opinion rendered by Mr. Justice LEWIS in Roberts v. Atlanta Consolidated St. Ry. Co., 104 Ga. 805, 30 S. E. Rep. 966. It is not contended by the defendant in the instant case that the stenographer's notes of the testimony of the witness read by him to the jury were inaccurate or incorrect. As we held in Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395, "Courts of justice exist for the administration and furtherance of justice and in the conduct of trials generally much must be left to the discretion of the trial judge." See also to the same effect, Seaboard Air Line Ry. v. Scarborough, 52 Fla. 425, 42 South. Rep. 706; Malsby v. Gamble, 61 Fla. 310, 54 South. Rep. 766; Investment Co. v. Trueman, 63 Fla. 184, 57 South. Rep. 663.

We are further of the opinion that the oral statement made by the trial judge to the jury concerning the reading by the stenographer of his notes was proper, being simply in the nature of a cautionary direction or instruction and was not violative of Section 3990 of the General Statutes of 1906, providing that the charge of the court in capital cases shall be wholly in writing. See the discussion in Driggers v. State, 38 Fla. 7, 20 South. Rep. 758, and Mathis v. State, 45 Fla. 46, 34 South. Rep. 287.

No reversible errors having been made to appear to us, the judgment must be affirmed.

TAYLOR, C. J., and COCKRELL, WHITFIELD and ELLIS, JJ., concur.