H. & C. OPERATING COMPANY v. MAGNUS FOSSUM.

176 So. 865.

En Banc.

Opinion Filed January 4, 1937.

Rehearing Granted April 27, 1937.

On Rehearing October 23, 1937.

Further Rehearing Denied November 27, 1937.

*McKay, Dixon and DeJarnette,* for Plaintiff in Error;
*Hawthorne & Morehead* and *Estil H. Lanham,* for Defendant in Error.

ELLIS, P. J.—In 1934 the Miami Biltmore Hotel was being operated by the H. & C. Operating Company, a corporation. It employed Magnus Fossum on its night force in the kitchen and engineering room of the hotel. Fossum's duties required him to attend to the incineration of the garbage and the operation of the ice cubing machine. Fossum worked from about 5:30 in the afternoon until about 7 o'clock in the morning.

The ice cubing machine was of the type called the Blakeslee ice cuber, patented in 1908, and had been in use by the Hotel Company for many years. It consisted of a table with a metallic surface upon which was fixed a gang saw consisting of seven circular blades projecting about one and one-half inches above the surface of the table and some distance back from the front of it. At the end of the shaft to the left upon which the gang saws were fixed and about an inch and a half from the end of the table there was attached another saw called the cut off saw, much larger in diameter than the gang saws, and which projected several inches above the level of the table. There was a shelf attached to the table which the operation of cubing the ice raised and lowered as occasion required the use of the cut off saw. Ice blocks weighing 100 pounds were first cut into four parts of 25 pounds each. In the process of cubing the ice a 25-pound block was placed on the table flat side down and the operator by the use of a wooden guard pushed the block of ice into the gang saws which cut parallel grooves into the bottom of the ice about an inch and a half apart. When that process was completed the block of ice was pulled back to the edge of the table at which the operator stood and was then turned 90 degrees and again pushed by the operator through the gang saws, thus cutting the ice block into squares about an inch and

a half in length and width. The block of ice upon be-
ing pulled back to the operator was then lowered to the
shelf, the surface of which was several inches lower than
the surface of the table, placed on edge and then the op-
erator pushed the block of ice into the cut off saw, thus
producing cubes of ice about an inch and a half in thickness.

Fossum was employed by the defendant company in
January of 1934, and operated the machine for a period of
about five and a half months when the accident which is
the basis of this action occurred on the night of June 20,
1934. That night the Hotel Company was entertaining a
convention of some kind and there was an unusual demand
for the supply of ice cubes. The steward of the hotel
whose business it was to keep a supply of the ice cubes
flowing toward the kitchen and through it to the tables
and rooms of the hotel for the accommodation of its guests,
urged Fossum by words and manner to speed up his work
that an adequate supply of ice cubes might be furnished.

While pushing a twenty-five pound block of ice into the
gang saws which were driven by an electric motor the ice
rocked unsteadily upon the table so that Fossum placed his
hand upon the top of the ice block to keep it steadily upon
the surface of the table which he was unable to do with the
wooden guard. In the act of pushing the block of ice into
the gang saws the ice rocked or tilted slightly and Fossum's
left hand slipped from the surface of the ice and was
struck by the cut off saw at the left edge of the table. His
hand was so lacerated and mangled by the saw that ampu-
tation of the hand above the wrist became necessary.

He brought an action for damages for personal injuries
against the H. & C. Operating Company, his employer.
The declaration contained three counts. There was an
amended first count to which a demurrer was interposed,

as well as to the other two counts. The court withdrew from consideration the first and second counts and the parties went to trial upon the issues joined upon the third, count.

The third count rests upon the theory that it was the duty of the plaintiff's employer to provide the plaintiff with a "sound, safe and suitable" ice cubing machine with which to cut the twenty-five pound blocks of ice into the cubes desired by the hotel, but that the defendant not regarding its obligation in that behalf supplied a defective and unsafe machine for that purpose in that the saws of the machine which were used to cut the bottom surface of the ice into squares were dull; that the appliance provided for the raising and lowering of the shelf used to turn the block of ice into the cut off saw was broken and defective so that the shelf remained at a level several inches lower than the surface of the table, thus exposing more of the periphery of the cut off saw than would otherwise have been exposed in the process of cutting the ice by the gang saws; that by reason of the condition of the machine with its dull saws and defective appliance for raising and lowering the shelf, the machine became more dangerous to operate rapidly than would be the case if the machine had been in sound, safe and suitable condition; that the defendant's foreman, notwithstanding the defective condition of the ice cutting apparatus, required the plaintiff by peremptory language to make greater haste in the cutting of cubes of ice than the defective condition of the machine reasonably permitted it to be used to that end.

The count alleges that due to this combination of circumstances for which the defendant was responsible, the operation of the machine was more hazardous and attended by greater difficulties and dangers than would normally

exist if the machine had been in good condition with sharp saws and a workable appliance for the raising and lowering of the shelf upon which the ice block was intended to rest in the process of cutting the squares from the bottom of the ice block; that, notwithstanding these defects in the machine, the defendant's foreman by peremptory and offensive language urged the plaintiff to greater speed in the cutting of ice cubes than the condition of the machine reasonably justified.

A demurrer to that count of the declaration was overruled and the parties went to trial upon the pleas of not guilty, assumption of risk and contributory negligence. At the conclusion of the plaintiff's evidence the defendant moved for a directed verdict, which motion was overruled. The jury returned a verdict for the plaintiff in the sum of $20,000. The court, however, suggested a remittitur of $10,000, which was accepted by the plaintiff and judgment entered in that amount. To that judgment the defendant took a writ of error.

It is contended by the plaintiff in error that the evidence for the plaintiff showed that he assumed the risk of his employment and was guilty of contributory negligence and that the court should have therefore directed a verdict for the defendant.

An examination of the evidence does not reveal to us that the plaintiff was guilty of contributory negligence in the operation of the machine. It is true that in pushing the block of ice upon the gang saws he rested his hand upon the top of the block of ice from which his hand slipped and was struck by the cut off saw to the left of the table.

It appears from the evidence, as we understand it, that the placing of one's hand upon the block of ice in the operation of pushing it into the gang saws was necessary to

steady the ice upon the table as the ice was forced upon the gang saws. This was made necessary not only by the uneven surface of the block of ice due to the method of cutting the one hundred pound blocks into squares of twenty-five pounds each, which was done by pick and chisel instead of by saw, thus leaving an uneven surface of the twenty-five pound block, but to the dull condition of the saws which broke and tore the ice into chips and flakes, hurling them into the operator's face, which required him to stand a little to one side in the act of pushing the block into the saws to avoid the flying particles of ice; that it was also necessary because of the greater speed with which the foreman required the plaintiff to operate the machine to supply the necessary amount of ice cubes.

The plaintiff had also been advised by others who operated the machine that the placing of his hand upon the top of the block of ice insured greater steadiness of the block as it passed through the gang saws; that the machine had been operated in that manner with a reasonable degree of safety with the exception of one or two instances of which the plaintiff was not advised in which the operator injured his left hand on the cut off saw. These instances occurred during a period of nine or ten years during which that machine was operated.

In this state of case the placing by the plaintiff of his left hand upon the top of the block of ice which separated his hand from the gang saws by five or six inches was not an act of contributory negligence. This was not such an act or omission on the part of the plaintiff amounting to a want of ordinary care as in the circumstances would constitute the proximate cause of the injury. Plant Inv. Co. v. Cook, 74 Fed. Rep. 503.

In the circumstances developed by this case it cannot

reasonably be said that the plaintiff's act in placing his hand upon the top of the block of ice where it was protected from injury by the gang saws by the thickness of said block of ice was the proximate cause of the injury and that he could foresee that the dull condition of the saws would cause the ice to tilt to one side or ride upon the gang saws and throw his hand into the cut off saw. In other words, it does not appear that in these circumstances the injury was the result of mutual negligence of the plaintiff and defendant that would require an apportionment of the damages resulting from the injury. Christopher Co. v. Russell, 63 Fla. 191, 58 South. Rep. 45, Ann. Cas. 1913C, 564; Florida R. Co. v. Dorsey, 59 Fla. 260, 52 South. Rep. 963.

There was in the act of cutting right angle lines in the bottom of the block of ice with the machine supplied to the plaintiff for that purpose no reasonable ground to apprehend danger to his left hand by the tilting of the ice block causing his hand to slip from the top surface of the ice. Crosby v. Donaldson, 95 Fla. 365, 116 South. Rep. 231; Christopher Co. v. Russell, *supra.*

Upon the question of the assumption of risk the doctrine is that where a person accepts employment in which it is necessary for him to work in an obviously dangerous situation or under obviously dangerous conditions or with machines which in their normal operation are dangerous to use the employee assumes the risk incident to his employment. The doctrine rests upon either an express or implied agreement that the employee will assume the dangers ordinarily or obviously incident to the discharge of his duty in the particular employment and the same shall be at his own risk. It is the acquiescence of an ordinarily prudent man in a known danger, the risk of which he as-

sumes by contract; the voluntary act of an ordinarily prudent man who for hire takes the chance of a known or obvious danger incident to his employment.

The gist of the doctrine lies in the contract express or implied of an ordinarily prudent person that he will assume the known or obvious dangers of his employment and relieve the master of his liability therefor. 5 C. J. 1412; Jacksonville Beach v. Jones, 101 Fla. 95, 131 South. Rep. 369.

It is not consistent with this doctrine that an employer should through his negligence permit an instrumentality, which his employee is to use in the discharge of the duties of his employment and which in its normal application and use presents no obvious danger to the worker, to become dangerous by inattention to its proper maintenance and repair, thus injecting into the operation of the instrumentality an unknown or hidden danger in its operation and then claim that the employee assumed the risk of his employment.

We discover nothing in the evidence which furnishes any support for the contention that the plaintiff assumed the hidden or latent dangers incident to the operation of the ice cubing machine. Therefore we are of the opinion that the two defenses of contributory negligence and assumption of risk were not shown by the evidence to exist in this case so that the court should have either granted a motion for a directed verdict or a new trial upon those grounds.

The twenty-fifth assignment of error is based upon the court's refusal to charge the jury as follows at the defendant's request:

"Gentlemen of the jury, the Court charges you that after having withdrawn two counts of plaintiff's declaration from

your consideration, the remaining charges of negligence are: first, that the saws of the machine were dull; second, that the shelf used for the purpose of lowering ice to the cut off saw was broken and defective and did not raise and lower as it was intended and, third, that the defendant's foreman negligently and carelessly commanded the plaintiff in boisterous tones emphasized with oaths, exciting the plaintiff to such an extent as to render him unable to use due care for his own safety. Unless you believe from the evidence that the defendant was guilty of all of the three acts of negligence above outlined, and that all of the three acts of negligence proximately caused the injuries complained of, then your verdict must be for the defendant."

That charge related to the only issue before the jury; the only issue upon which the case, according to the pleadings, was tried. The court in his charge to the jury read the first omitted count of the declaration as containing the acts of negligence of which the plaintiff complained. That count was by order of the court expressly removed from consideration by the jury and the issues thereon of course were likewise removed because as that count did not constitute a part of the plaintiff's case no issue could possibly arise on it. Yet, the court gave in charge to the jury that count of the declaration as containing the issues submitted by the parties.

At the time, that error of the court appeared to have made no impression whatsoever upon counsel either for the plaintiff or the defendant and the court's error in this particular passed unobserved. According to the statement of the court therefore as to what issues were to be tried the jury had before it merely the allegations of the first amended count, but as a matter of fact the issues which were submitted to the jury by the pleadings in the case

were the allegations contained in the third count which the court expressly stated he would submit to the jury and that he would withdraw the first and second counts.

When the plaintiff rested his case counsel for plaintiff and defendant entered into the following stipulation: that the life expectancy of the defendant was 23.82 years, following which stipulation counsel for the defendant moved for a directed verdict. Thereupon the court said: "I am going to withdraw from the jury the first and second counts, and let the third count go to the jury," and thereupon Mr. DeJarnette suggested to the court that he grant or deny the motion in its entirety, to which the court replied as follows: "I have. I have withdrawn the first and second, and denied the motion as to the third count. I will grant you a verdict on the first and second count. I will overrule you as to the third count."

Mr. DeJarnette, counsel for the defendant, then asked the court if he would consider a motion to require the plaintiff to file an amended declaration setting out specifically the acts of negligence in separate counts, on the ground that the acts of negligence complained of constitute duplicity. The court replied, "No," to which ruling of the court counsel for the defendant did then and there except.

The court then stated: "The first count and second count withdrawn. The case goes to the jury on the third count." To which ruling the defendant by counsel excepted. Thus it appears from the record that after granting to the defendant a verdict upon the first and second counts of the declaration and denying its motion for such a verdict upon the third count, the court nevertheless instructed the jury that the issues which it was to try were issues made upon the first amended count and the pleas of assumption of risk and contributory negligence.

The refusal of the court to give the above quoted charge to the jury on the third count was in itself confirmatory of the action of the court in submitting issues to the jury upon the first amended count on which the court had already given a directed verdict for the defendant. Such an egregious error in the trial of the cause could have resulted in nothing but confusion worse confounded and left court, counsel and jury utterly without any definite ideas concerning the issues submitted, and contradictory views as to the effect of the evidence upon the real questions which should have been submitted to the jury under proper instructions.

Section 4499 C. G. L. 1927 provides that no judgment shall be set aside or reversed or new trial granted on the ground of the misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure unless in the opinion of the court to which application is made after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice.

If the trial of a common law action in a court of competent jurisdiction is to proceed in an orderly manner and with a reasonable amount of accuracy in conformity with the rules prescribed by which the truth of the allegations of the declaration and the averments of the pleas is to be ascertained, then it cannot be said that the action of the court in submitting issues to the jury upon which he had already ordered a finding for the defendant and refusing to advise the jury upon the issues which the court had previously stated were contained in the third count of the declaration and which would be submitted to the jury did not operate as a miscarriage of justice.

Although the briefs in this case do not conform to the

requirements of Rule 20 as completely as that rule contemplates should be done, the point above discussed may be said to be sufficiently presented by the third and fourth statements in the brief of the plaintiff in error of the questions of law involved.

It is unnecessary to examine further the lengthy briefs that were submitted in this case, the many collateral points discussed as such discussions would lead to no beneficial result either to the parties in this case or to the bar generally.

For the error pointed out, therefore, which resulted in a miscarriage of justice because the jury was not informed of what issues it was to try, the judgment of the court is reversed.

WHITFIELD, C. J., and TERRELL and DAVIS, J. J., concur.

BROWN, J., concurs in the conclusion.

BUFORD, J., dissents.

BUFORD, J. (dissenting as to conclusion reached).—I am unable to concur in the conclusion reached in the opinion prepared by Mr. Presiding Justice ELLIS in this case.

It is true that the record shows that when the Presiding Judge gave instructions to the jury he first read from the count in the declaration and evidently read the first count, which had been withdrawn from the consideration of the jury, instead of the third count which constituted the declaration upon which the case was tried. But, further in the instructions he instructed the jury upon every phase of negligence presented by the third count of the declaration and, therefore, taking the charge as a whole, the jury was fully instructed as to the issues to be determined by it.

It is well settled that the entire charge of the court, or the entire portion of it bearing on a subject, must be con-

sidered in determining whether the charge is free from error.

Florida Motor Transp. Co. v. Hillman, 87 Fla. 512, 101 So. 31. See Disney v. State, 72 Fla. 492, 73 So. 598; Hobbs v. State, 77 Fla. 228, 81 So. 444; Miller v. State, 76 Fla. 518, 80 So. 314; Reynolds v. State, 34 Fla. 175, 16 So. 78."

It is also settled that error in one part of a charge may be corrected by another portion of it. Wood v. State, 31 Fla. 221, 12 So. 539; Palatine Ins. Co. v. Whitfield, 73 Fla. 716, 74 Sou. 869; Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 So. 367; Johnson v. State, 29 Fla. 558, 10 Sou. 686; Barton v. State, 72 Fla. 408, 73 Sou. 230; Kennard v. State, 42 Fla. 581, 28 So. 858.

Now, as stated above, the reading of a count from the original declaration was a part of the court's charge in this case and there was no objection to this part of the charge and no exception. Neither was the question of the propriety of reading the count of the declaration as read raised by a ground in the motion for a new trial. Therefore, such action on the part of the trial court cannot be resorted to by this Court as a ground for reversal. Spanish v. State, 72 Fla. 420, 73 Sou. 230; Williams v. State, 32 Fla. 251, 13 So. 429; Bynum v. State, 46 Fla. 142, 35 So. 65; Glover v. State, 22 Fla. 493; Stearns, etc., Lumber Co. v. Adams, 55 Fla. 401, 45 So. 847; Steele v. State, 85 Fla. 57, 95 So. 299; McSwain v. Howell, 29 Fla. 248, 10 Sou. 588.

Not only was the point upon which reversal is proposed not presented in the court below, but it has not been raised or insisted upon in this Court.

Therefore, I think the judgment should be affirmed as there appears to be disclosed by the record no other error which would warrant reversal.

494

PER CURIAM.—Pursuant to the filing of our opinion in this cause on January 4, 1937, defendant in error applied to this Court for leave to the trial court to amend the bill of exceptions as provided in Section 464 C. G. L., being Section 1 of Chapter 12018, Acts of 1927. Thereupon, this Court entered its Order granting leave to the Honorbale Paul D. Barns, Judge of the Eleventh Judicial Circuit, authorizing and directing him to investigate and determine the correctness or incorrectness of the transcript of the record in this cause in so far as it relates to the count of the declaration herein which the trial court read to the jury at the time of the trial of this cause and directing the said Judge to cause to be certified to this Court his findings in this particular in the form of a supplemental transcript of the record herein.

Pursuant to that Order, the Honorable Paul D. Barns made the following finding in this regard.

"1. That the bill of exceptions settled in this cause and now on file herein is in error in that it purports to show that the trial judge read to the jury at the trial of this cause the second count of the amended declaration, whereas I find the true facts to be that the trial judge read to the jury the third count of the amended declaration, and no other count thereof. A true and correct copy of the count of the declaration herein which the trial judge read to the jury is attached hereto marked Exhibit 'A,' and made a part hereof.

"2. That the transcript of record herein contains a true and correct copy of the bill of exceptions on file in said cause, in so far as it relates to the count of the declaration which it purports to show the court read to the jury; but said bill of exceptions is in error in the particulars mentioned in the preceding paragraph hereof.

"3.  That these findings to be transmitted to the Supreme Court in accordance with the order of said Court to be used as a supplemental transcript of record in said cause now pending in said Court.

"4.  That counsel of record have in nowise induced said error, but same was an inadvertent error of the Court Reporter, which failed to catch the attention of counsel or the undersigned judge.

"DONE AND ORDERED at Miami, Florida, this 8th day of February, A. D. 1937."

Exhibit "A" attached thereto is the third count of the declaration, reading as follows:

"On or about the 20th day of June, A. D. 1934, the defendant Corporation was engaged in the business of operating the Miami Biltmore Hotel, in Dade County, Florida.  That on the aforesaid date plaintiff was employed by the defendant Corporation to perform certain duties in and about said hotel, among which duties was operating an electric power driven gang saw used by the defendant Corporation to cut 25-lb. cakes of ice into small cubes, and plaintiff alleges that it was the duty of the defendant Corporation to use due, proper and ordinary care and caution to furnish the plaintiff with reasonably sound, safe and suitable machinery and appliances with which he could safely perform his work as aforesaid; yet, the defendant Corporation, not regarding its duty as aforesaid, did, on or about the 20th day of June, A. D. 1934, in the County of Dade and State of Florida, negligently, recklessly and carelessly fail and refuse to use due diligence, proper care and caution to furnish the plaintiff with sound machinery and saws with which he could with reasonable safety perform his said work of sawing the 25-lb. cakes of ice into small cubes; but the said defendant Corporation furnished to the

plaintiff a machine, appliance and saw with which to perform said work which were insecure, defective, insufficient and dangerous, in that the saws of said machine were dull and the appliance provided for operating the shelf of said machine for the purpose of lowering the ice into the cut-off saw was broken and defective so that it would not raise and lower as was its intended purpose, but said shelf remained in a lowered position thereby exposing the cut-off saw which would have otherwise been guarded had said appliance not been broken and defective; and by reason of the dull condition of said saws, it was extremely dangerous to operate said machine, appliance and saws at a rapid rate of speed; that notwithstanding the fact that it was extremely dangerous for the plaintiff to operate said machine, appliance and saws rapidly, all of which was known or should have been known by the defendant and the defendant's foreman and vice-principal, the defendant's foreman and vice-principal, who was thereunto duly authorized in that behalf, negligently, recklessly and carelessly commanded the plaintiff in boisterous tones emphasized with oaths to hurry up with his work in operating said machine, appliance and saws; that said foreman and vice-principal repeated the order to hurry in boisterous tones and emphasized with oaths three or four times; that the orders as above stated which said defendant's foreman and vice-principal negligently, recklessly and carelessly directed to the plaintiff, excited, distracted and disconcerted the plaintiff to such an extent as rendered him unable to exercise due care for his own safety, which said conduct on the part of said defendant's foreman and vice-principal created a hazard not ordinarily incident to the employment of the plaintiff. That without any fault upon the part of the plaintiff and while he was so engaged in the work for the

defendant Corporation as aforesaid and on the date afore-said while sawing the 25-lb. cakes of ice into small cubes, but solely by reason of the defective, insufficient, insecure and dangerous condition of the machine, appliance and saw which the defendant Corporation had recklessly, carelessly and negligently furnished the plaintiff with which to per-form his said work and because of the aforesaid orders to hurry which said defendant's foreman and vice-principal recklessly, carelessly and negligently commanded the plain-tiff to perform, which said orders the plaintiff was endeav-oring to perform, plaintiff's left hand became caught in the saws of said machine and was then and there so badly cut and mangled as to necessitate the same being amputated about three inches above the wrist, thereby maiming and wounding plaintiff for life; his nervous system, was thereby severely and permanently shocked and injured; he was caused thereby to suffer and will continue for an indefinite period in the future, to suffer great mental and physical pain; it will be necessary for him to purchase an artificial hand, which will cost approximately $500.00; he will be thereby forced to incur and pay medical expenses for an indeterminable period of time in the future; he, was thereby prevented for a long period of time, to-wit, from the date of said injuries to the present time, and will be so prevented permanently, from carrying on or conducting his usual vo-cation as a farmer, at which he was capable of earning $7,500.00 per year; he also lost the employment alleged in the declaration, which was merely temporary, and which paid him at that time $45.00 per month; he has been thereby prevented. from performing any form of manual labor which requires the use of his hands, and has thereby suf-fered the loss of large profits and earnings which he would otherwise have secured from his said labors, and will con-

tinue permanently to suffer such loss of profits and earnings."

Certified copy of the Order correcting the Bill of Exceptions and transcript of the record has been filed in this Court as supplementary to the transcript of the record originally filed herein.

The above noted correction of the Bill of Exceptions and the transcript of the record eliminates from the record the error which was pointed out in our said opinion and judgment of January 4, 1937.

We have reexamined the record, have heard the argument of counsel and considered the briefs filed herein and find that the record as amended discloses no reversible error. Therefore, we cancel and withdraw our judgment of reversal heretofore entered and do now affirm said judgment of the Circuit Court, adopting as reasons therefor what was said in our said opinion of January 4, 1937, except that part thereof which referred to what then appeared as an error of the trial court in reading to the jury the first count of the amended declaration instead of the third count of the amended declaration.

So ordered.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.