WALTER NICKLES, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

CRIMINAL LAW—OPINION EVIDENCE—IDENTIFICATION OF LETTER—FORM OF VERDICT IN ASSAULT WITH INTENT TO COMMIT MURDER—REPETITION OF CHARGES.

1. The fact of the finding of empty gun shells, and gun wadding on the scene of a shooting affray the next day after such affray, is not inadmissible as evidence on the ground of remoteness, if such fact tends to corroborate the case made by the prosecution or defense.

2. A witness who testified to having heard the report of the gun fired in an affray, and who testified to having seen another witness ten or fifteen minutes before the firing of the gun going away from the scene of the affray after water to a well, that such witness testified was about three-eighths of a mile away from the scene of the shooting, will not be allowed to

state whether such water-carrying witness had time to get back to the scene of the affray before such shooting, on the ground that such evidence would be merely the expression of the witness' opinion, which the jury could arrive at as well as such witness from the data given.   (CARTER, J., dissenting.)

3. A witness in reply to cross-interrogatories, admitted having written and mailed a letter purporting to have been signed by himself, at a certain post-office addressed to the State Attorney about a certain date, and also admitted having written in such letter material parts of its contents that were quoted to him verbatim. The State Attorney also testified to having received by due course of mail the letter purporting to have been written by such witness at about the date of its mailing, and exhibited the envelope in which it was received, which showed by its post-mark that it had been mailed at the post-office named by the witness; the State Attorney also testifying that such was the only letter he had ever at any time received from such witness. *Held,* that under these circumstances such letter was, without being exhibited to the witness, sufficiently identified as having been written by such witness to become admissible in evidence.

4. There is no error in the refusal of the trial court to reiterate in different language charges that have already been given in substance.

5. The following verdict: "We, the jury, find the defendant guilty of assault with intent to murder in the first degree, *Held,* to be sufficient to convict the defendant of the crime of assault with intent to *commit* murder. The word *"murder"* being often properly used in the dual character of both a noun and a verb.

This case was decided by Division A.

Writ of error to the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*Benj. S. Liddon, Edwin R. Blow* (with whom was *W. H. Price* on the brief) for plaintiff in error.

*W. H. Ellis,* Attorney-General, for the State.

TAYLOR, C. J.—The plaintiff in error was indicted, tried and convicted of the crime of assault with intent to murder in the Circuit Court of Jackson county at its spring term, 1903, and from the sentence imposed seeks relief by writ of error here.

The State introduced one James Lewis as a witness, who, after testifying that he had visited the scene of the shooting by the defendant on the next day after the occurrence, was asked the question: "Can you state whether or not any shells were picked up that day or not?" To this question the defendant objected on the ground that what was done on the next day after the shooting was not recent enough. The objection was overruled and exception taken. The witness was then asked the following question: "State whether or not you picked up anything, or anything was picked up in your presence at that time?" The defendant objected to this question on the same ground as the above, but the court overruled the objection to which ruling exception was taken, and these rulings constitute the first assignment of error that is argued. The witness in reply to these questions testified to having picked up some gun wadding on the scene of the shooting. There was no error here. The locality and circumstances attending the shooting were fully described by other witnesses. The fact of the shooting was not denied by the defendant, and the finding of gun wads or empty gun shells on the ground the next day after the shooting, corresponding in size with the calibre of the gun used, was a corroborative circumstance not improper, on the ground of remoteness, to be considered by the jury for what it was worth in connection with all the other facts in the case.

Alfred Nickles, a witness for the defendant, whose testimony was taken out of court on interrogatories, afte, testifying that he was quite near to the scene of the shooting, and heard the shot, and that he saw one Joe Seegars, who as a witness for the State had testified that he was present and witnessed the shooting, about ten or fifteen minutes

before the shooting going away from the scene thereof to the prosecuting witness' house, distant about three-eighths of a mile, after water, was asked the question by the defendant: "Did he have time to get back to place of difficulty before difficulty after getting water?" and in answer thereto said: "No sir, he did not have time to leave Paul's house." After this answer had been read to the jury, on motion of the State Attorney, it was stricken out by the court on the ground that it was an expression of opinion by the witness. Whereupon the court instructed the jury to disregard the evidence of the witness to the effect that the boy Seegars had not had time to get back—to leave Paul's house. To both of these rulings the defendant excepted, and they constitute the second assignment of error argued. There was no error here. The witness stated about how long before the shooting it was that he saw the boy Seegars going away after water, and he also stated the distance from the scene of the shooting to the place where he went for water, and the jury were as well qualified as was the witness to say from this data whether the boy could have gotten back in time to witness the shooting, and the stricken answer of the witness was merely the expression of his opinion on the subject.

The third assignment of error insisted on here is the admission in evidence on behalf of the State of a letter written by the defendant's witness Alfred Nickles, who is the father of the defendant, to the State Attorney, the sum and substance of which was a request to the State Attorney that he should avoid his obligations to the State and favor the defendant as much as possible. It is urged here that it was not admissible because it was not shown to have been written by the said Alfred Nickles. We do not think there is any merit in this assignment. In the cross interrogatories propounded to the witness Alfred Nickles he was asked if he had not written a letter to the State Attorney about the time of the receipt by him of the letter introduced, and if he had not mailed said letter at a place called Bascom,

48 Fla—4.

all of which he answered in the affirmative. Material parts of the letter were also quoted to him *verbatim* in the interrogatories, and he was asked if he had written that to the State Attorney, to which he replied in the affirmative. Besides this the State Attorney testified to the receipt of the letter at about the time it was mailed by due course of mail, and exhibited the envelope in which it was received, showing that it had been mailed at Bascom, and stated further that this was the only letter he had ever at any time received from Alfred Nickles. Under these circumstances we think that the letter was sufficiently identified as having been sent by said Nickles to render it admissible. It was admissible because of its tendency to show the great bias of the witness Alfred Nickles in favor of his son, the defendant, and was valuable as evidence only for the purpose of affecting his credibility as a witness, and to this purpose the court expressly confined it by explicit instructions to the jury.

The fourth assignment of error insisted on here is the refusal of the court to give a charge requested by the defendant. There was no error in this, since the pith and substance of the refused instruction had been already given by the court to the jury in more amplified form, and there was no error in the court's refusal to reiterate it by giving the charge requested.

The defendant moved in arrest of judgment on the ground that the verdict was not for any offense known to the laws of Florida, the verdict being as follows: "We, the jury, find the defendant guilty of assault with intent to murder in the first degree." This motion was denied and such ruling constitutes the fifth asignment of error argued here. The contention here is that this verdict is faulty because of its omission of the word *"commit,"* that it should have been: "We, the jury, find the defendant guilty of assault with intent to *commit* murder in the first degree." There is no merit in this contention. The word *"murder"* is often used in the dual character of both a noun and a verb. When it is said that A concealed himself with intent

to murder B, it is understood that his purpose was to commit murder upon B, without the use of the verb commit, and the form of the verdict here shows that the expression "to murder" was used in the sense of a verb, and sufficiently shows the purpose of the jury to convict the defendant of the crime charged, *viz*: of an "assault with intent to commit murder."

The sixth and last assignment of error urged here is the denial of the defendant's motion for new trial. The only ground of this motion argued here is that the evidence was insufficient to sustain the verdict. Without reiterating it here, we think that the verdict was amply sustained by the evidence on behalf of the State, which seems to have been believed by the jury.

Finding no error in the record, the judgment of the Circuit Court in said cause is hereby affirmed; and, as the defendant showed by his own oath and other evidence, that he was insolvent and unable to pay the cost in the case in whole or in part, it is ordered that the cost of this writ of error be paid by the county of Jackson.

HOCKER and COCKRELL, JJ., concur.

SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.

CARTER, J., dissents.

HOCKER, J., concurring.—I concur in the opinion of the Chief-Justice that the Circuit judge committed no reversible error in striking out the testimony of Alf. Nickles to the effect that the boy Seegars had not time to get back to the place where the difficulty occurred, after going for water.

Alf. Nickles was an old man—nearly eighty-three years old—so infirm that his testimony was taken by deposition at his home. The defendant was his son. The evidence shows him to have been interested in the case, and

.actuated .by strong feelings of partiality. He had already stated that he did not see any part of the difficulty, and knew nothing of it from his own knowledge. In reply to the question "Did you hear the gun fire?" he answered, "Yes sir, I heard it. I heard a gun fire. I don't know whether it was it or not."

This evidence raises an inference which is not rebutted —that his opinion that Seegars had not had time to return to the scene of the difficulty, was formed largely, if not entirely, from what others had told him, and not from facts which he knew of his own knowledge.

CARTER, J., dissenting.—I am satisfied that the court erred in striking the answer of the witness Alfred Nickles: "No sir, he did not have time to leave Paul's house," upon the ground that it was an expression of the witness' opinion. The following authorities demonstrate the error in the ruling: *Ward v. Charleston City Railway Company,* 19 S. C. 521; *Funston v. C. R. I. & P. Ry. Co.,* 61 Iowa 452, 16 N. W. Rep. 518; *Alabama G. S. R. Co. v. Yarbrough,* 83 Ala. 238, 3 South. Rep. 447; *Healy v. Visalia & T. R. Co.,* 101 Cal. 585, 36 Pac. Rep. 125; *Town of Cavendash v. Town of Troy,* 41 Vt. 99; *Fulsome v. Town of Concord,* 46 Vt. 135; *Ohio & Mississippi Ry. Co. v. Brown,* 49 Ill. App. 40; *Sears v. Seattle Consolidated St. Ry. Co.,* 6 Wash. 227, 33 Pac. Rep. 389, 1081; *People v. Hopt,* 4 Utah 247, 9 Pac. Rep. 407. See, also, *Commonwealth v. Sturtivant,* 117 Mass. 122; Wharton's Crim. Ev., secs. 458 to 460, inclusive; Lawson on Expert & Opinion Ev. pp. 505 *et seq.* The witness stated that Seegars left the scene of the difficulty about ten or fifteen minutes before the shooting began, going to a house about three-eighths of a mile distant for water. ·He was uncertain about the time, giving it as about ten or fifteen minutes, and the distance, giving it as about three-eighths of a mile. If he could have given the exact distance and the exact period of time, he could not because of the imperfection of the human powers of description and

the paucity of our language, have reproduced and made palpable to the jury all the minute elements and details entering into the question whether Seegars had time to return before the shooting began, such as, the topography of the country, the gait at which Seegars was traveling and the many other elements which readily suggest themselves, known to him, but not to the jury. Therefore the jury were not and could not be put into possession of the facts which enabled the witness to say that Seegars did or did not have time to return, and consequently it can not be said that the jury were as competent to form an opinion upon the question as the witness. I think the principle announced in the case of *Higginbotham v. State,* 42 Fla. 573, 29 South. Rep. 410, admits the evidence as competent, and that the so-called opinion of the witness is merely the statement of a collective fact. In the Higginbotham case the principle is stated as follows: "An inference necessarily involving certain facts may be stated without the facts, the inference being an equivalent to a specification of the facts; but when the facts are not necessarily involved in the inference (e. g. when the inference may be sustained upon any one of several distinct phases of fact, none of which it necessarily involves) then the facts must be stated. In other words, when the opinion is the mere shorthand rendering of the facts, then the opinion can be given subject to cross-examination as to the facts on which it is based. Opinion, so far as it consists of a statement of an effect produced on the mind becomes primary evidence and hence admissible whenever a condition of things is such that it can not be reproduced and made palpable in the concrete to the jury."