# DECISIONS

OF THE

# Supreme Court of Florida

## JANUARY TERM, 1908

JANUARY ADAMS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. The method of conducting trials, as to the time of assembling, the recesses of the court, the sending for witnesses and the introduction of evidence, must be left in the nature of things, to the reasonable discretion of the trial court, and an appellate court will not interfere unless it appears that some injustice or wrong has been done the accused.

2. Where the evidence raises grave doubt as to the defendant's guilt, the general rule that excludes the consideration of newly discovered evidence which is of a cumulative or rebutting nature, should be relaxed.

This case was decided by Division B.

Writ of Error to the Circuit Court for Hernando County.

The facts in the case are stated in the opinion of the court.

*Davant & Davant*, for plantiff in error;

*W. H. Ellis*, Attorney General, for the state.

HOCKER, J.—At the Fall term, 1907, of the circuit court of Hernando county, January Adams, the plain-

tiff in error, referred to hereafter as the defendant, was indicted for the murder of one George Green, and upon trial was convicted of murder in the second degree and sentenced to the state prison for the term of his natural life. He seeks a reversal of this sentence.

There are two assignments of error: First, that the court erred in allowing the cause continued from the afternoon of the 21st day of November, 1907, to the morning of the 22nd day of November, 1907, upon motion of the state attorney, over the objection of defendant, for the purpose of allowing the state to produce a witness whom the state attorney stated had been present, and had gone home, there being no showing as to the materiality of the witness and reason for his absence; whereas, his honor the circuit judge should have refused such postponement and required the cause to proceed.

Second, that his honor the circuit judge erred in overruling the defendant's motion for a new trial, upon the following grounds, to wit:

(a) That the verdict was contrary to law.

(b) That the verdict was contrary to the evidence.

(c) That the verdict was contrary to the law, the evidence and to the charge of the court.

(d) Because of evidence discovered by the defendant subsequently to his trial and conviction, which would have materially affected the finding of the jury herein as was shown by affidavits filed in support of the motion."

As to the first assignment it appears that about 4 o'clock p. m., on the day the trial began and after the evidence for the state and defendant had been concluded and the defendant had rested his case the state attorney announced that the testimony developed that it was necessary to have another witness who had gone home, and asked the court to take a recess until the witness could

be sent for. The court then took a recess until the usual time of convening the court next morning. We find no reversible error in this action of the court. The method of conducting trials, as to the time of assembling, the recesses of the court, the sending for witnesses, and the introduction of evidence, must in the nature of things, be left to the reasonable discretion of the trial court. The object of a trial is to approximate justice as nearly as possible, and unless it appears that some injustice or wrong has been done a defendant, this court will not interfere with the action of the trial court. See Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395 and authorities there cited.

As to the second assignment of error, the record shows that the defendant filed an affidavit in support thereof, on the ground of newly discovered evidence. Among other things he alleges therein that subsequently to his trial he had learned that one Joe Ruth was an eye witness to the shooting and will testify that George Green was at the time attempting to shoot and kill the defendant with a single barrel shot gun, and that defendant was in imminent danger of death at the hands of George Green at that time, and it was necessary for the defendant to shoot Green to save his life, and that he did not know these facts until the affidavit of H. F. Price was shown him; that affiant had been imprisoned continuously in the Brooksville jail since the day after the shooting, and had had no opportunity to talk and secure witnesses in his behalf.

The affidavit of Mr. H. F. Price was filed, stating among other things that January Adams worked for him at one time; that soon after the shooting of George Green he had a talk with Joe Ruth who worked for him, and that Joe Ruth told him that he was present when Green was shot and saw the shooting, and that Green pointed a single barrel shot gun at January Adams

as he came out of Herbert Pugh's house at Wiscon; that Adams called to Green three times in quick succession, and Green did not reply but continued to point the gun at him; that Adams shot with a pistol and left. Affiant Price says that he believes Ruth's testimony can be secured at another trial, and that he will testify as above.

Defendant also stated in substance in his affidavit that on another trial he can secure witnesses who will rebut the evidence given against him by George Watson, who was one of the witnesses introduced by the state on the next morning after the recess which has been spoken of was taken, and that he has learned these facts since his trial.

George Watson testified on the trial that he met the deceased shortly before the shooting; that he and deceased were standing about seventy-five yards from the house where Green was shot, and about same distance from his own house; that Green went towards the house where he was shot (Pugh's) and the witness went to his own house, and when he got home he heard the shots; and that when he parted from Green the latter was not armed.

No witness in the case testified that he saw the shooting except the defendant, who stated that when he went out of Pugh's house he saw a man standing about fifteen feet off—it was in the night time; that he took the person he saw for Green, called him three or more times and received no answer; that Green had a gun leveled on him, and he fired his pistol three or four times at Green, and then ran around the house.

The evidence is uncontradicted and overwhelming that Green was drunk that night; that he went to Pugh's house, where the defendant and other negroes were; that he got angry about a very trivial matter and threatened to shoot Adams; that he was ejected from the

house by Pugh and others; that he had a single barrel shot gun loaded with a shell which was cut around so as to throw the shot close together; that he continued his threats to kill Adams, after he was put out of Pugh's house, some of which the defendant heard. Under these circumstances Watson's testimony that Green was unarmed a few moments before the shooting can have but little probative force in contradicting the defendant; but so far as we can judge it seems to have been the principal evidence upon which the jury convicted the defendant. The State's evidence does not seem to so satisfactorily answer the question what Green was doing at Pugh's house at a late hour of the night, after he had been ejected therefrom for turbulence, and after his repeated threats to kill Adams, if he was not there to carry out his threats. The evidence shows that Adams was at Pugh's house until a late hour, and when he left the house, and almost immediately after he got out of the door, the shooting occurred. Not a witness testified to seeing the actual shooting except the defendant, though several were in Pugh's house and heard Adams immediately after leaving the house call Green three or four times, and heard no answer. There is no inconsistency in defendant's testimony. It substantially agrees with that of all the other witnesses, up to the very moment of the shooting, except in so far as Watson's evidence may tend to show that Green was unarmed at that moment, which is not direct to that effect, but only inferential, and that inference is not controlling because Green may have had his gun at some convenient place where he could easily put his hand on it. He certainly had it in the earlier part of the night, when he was threatening to shoot Adams, and if he had any other purpose in going to Pugh's house, where he had reason to believe Adams was than to carry out his threats, the evidence does not show it.

The state also introduced on the next morning after the recess spoken of two other witnesses, *viz*: .H. D. Evans who testified that he lived about three hundred yards from where the shooting occurred; that he saw Green on his porch yard steps, about fifteen minutes after the shooting, and that he had no gun at that time, and Quitman Varn, who testified that he lived about two hundred yards from where the shooting occurred, and saw Green about ten minutes after the shooting and he was not then armed. This evidence does not satisfactorily show that Green was not armed with a gun when he was shot, for he may have thrown down his gun when shot or ·otherise have disposed of it.

It may be that the proposed newly discovered evidence is liable to some criticism as being cumulative to that of the defendant or as being in rebuttal of that of the State. See Mitchell v. State, 43 Fla. 584, 31 South. Rep. 242, and Jones v. State, 35 Fla. 289, 17 South. Rep. 284. But while admitting that the general rules regulating the granting of new trials on the ground of newly discovered evidence are wise and should generally be adhered to, they are not inflexible, and must sometimes bend in order to meet the ends of justice. In the case of Barker v. French, 18 Vt. 460, it was held that a court will not refuse to grant a new trial for newly discovered evidence for the reason that it is cumulative merely, if it is sufficient to render clear that which was before a doubtful case. 14 Ency. Pl. & Pr., 820, 821 and cases cited. See also Hilliard on New Trials (2nd ed.) p. 504.

We are of opinion that in view of the unsatisfactory character of the evidence as shown by the record upon which the verdict was rendered, and of the offer of the newly discovered evidence which, if satisfactorily proven, will throw light upon the question as to whether the

defendant acted in self defense, the motion for a new trial should have been granted.

The judgment is reversed at the cost of Hernando county.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.