CHARLES B. KERSEY, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed April 5, 1917.

1. As a general rule, ordinary witnesses are required to confine their testimony to facts and are not permitted to give their opinions and conclusions; but to this rule there are certain exceptions, and as to whether or not the facts and circumstances testified to in a case are of such a nature as to warrant the admission of the opinions and conclusions must be largely within the discretion of the trial judge, and an appellate court should not interfere with the exercise of such discretion unless a clear abuse thereof is made to appear.

2. Courts of justice exist for the administration and furtherance of justice, the object of a trial being to approximate justice as nearly as possible; and, unless it is made to appear to an appellate court that some injustice or wrong has been done a defendant in a criminal prosecution by permitting an ordinary witness to give his opinion or conclusion, such court will not interfere with the action of the trial court in admitting such testimony.

3. If the jury may be fully equipped by the testimony of the facts and circumstances as detailed by an ordinary witness, in other words, if all the data may be exactly reproduced by testimonial words and gestures, an ordinary witness should not be permitted to give his opinion, it being the province of the jury to form opinions and draw conclusions from the facts and circumstances given in evidence; but, where all the data cannot be exactly so reproduced, ordinary witnesses may, where justice requires it, be permitted to give their opinions in connection with the facts upon which they are founded, in order

·that the jurors may be in a position to draw correct or proper conclusions therefrom.

4. Opinions of ordinary witnesses based upon or derived from their observation or experience may be admissible in evidence in connection with component facts, when, from the nature of the subject under investigation, no better evidence can be obtained.

5. Before an ordinary witness is permitted to give in evidence his opinion or conclusion concerning a matter he should be required to detail to the jury, so far as he is able to do so by testimonial words and gestures, all the facts and circumstances upon which his opinion is based, in order that the jury may have some basis by which to judge the value of the opinion;· it should be made to appear to the trial court that the subject-matter to which the testimony relates cannot be reproduced and described to the jury precisely as· it appeared to the witness at the time, and that the facts upon which the witness is called to express his opinion are such as men in general are capable of comprehending and understanding.

6. A mere preliminary question to a witness is not open to objection.

7. Where an answer to a question presents evidence which is illegal or objectionable on any known ground, the proper practice is a motion to strike it out and have the jury directed not to consider it, the movant specifying his objections to the evidence with like particularity as in objecting to questions.

8. A non-expert witness in a criminal prosecution for murder, who has testified that he was a member of the coroner's jury that held the inquest and that he made an examination of the body of the deceased, may be permitted to testify that he saw no powder burns on the flesh.

9. It is of the utmost importance that the jury should hear the testimony given by witnesses and when the trial judge is in doubt as to whether the jury can hear the testimony given by a witness, especially one of tender years, such judge may properly ask the jury if they can hear the testimony of the witness and, upon one of the jurors replying "not very well,"

may direct the court reporter to read such testimony from his notes to the jury, and where, in response to a question from the trial judge, such witness states that his testimony as read was as he had given it, no error in having the testimony so read is committed.

10. The trial judge may not be said to emphasize improperly the testimony of a witness because the witness is speaking in such a low tone that the judge, apprehending that the testimony might not be audible to the jury, several times asked the jury . if they could hear the witness and requested the witness to "talk up," especially when the trial judge expressly states to the jury that his only purpose in so doing was in order that they might hear the testimony.

11. If a question is propounded to a witness which tends to elicit improper testimony, it is the duty of the opposite party to object to it and obtain a ruling on his objection. If improper testimony is given in response to a proper question, the proper method of removing it from the consideration of the jury is a motion to strike it. If improper testimony is given in response to an improper question to which no objection is made, a motion to strike is the recognized mode of removing it, but in such a case the granting or refusing of the motion is in the sound discretion of the trial court, and an appellate court will not disturb such ruling, unless an abuse of discretion is shown.

12. It is the province of the trial judge to determine whether or not an alleged confession made by a defendant in a criminal prosecution was freely and voluntarily made, and, in considering such question, such judge must determine the facts even upon conflicting evidence, and the appellate court, when called upon to review his ruling upon such evidence, must accord to his finding the presumption that it is correct, and refuse to disturb it, unless error in such ruling is clearly made to appear.

13. In a prosecution for murder when the indictment charges and the uncontradicted proofs establish that the deceased came to her death from a wound inflicted by a discharge from a shotgun, no harmful error is committed in excluding the testimony of the defendant that the deceased, who was his wife

and with whose murder he stood charged, had stated to him just previous to the time that her body was found that she had taken poison for the purpose of committing suicide, especially when the evidence further establishes that it was a practical impossibility for the deceased to have committed suicide by shooting herself.

14. An appellate court will refuse to consider an assignment of error which has no basis in the transcript of the record, as not being properly before it.

15. In a prosecution for murder, an instruction requested by the defendant that has no basis in the transcript of the record will be held by the appellate court to have been properly refused, especially when the trial judge has fully instructed the jury in his general charge upon the law of homicide in the different grades and what the burden was which rested upon the State.

16. The safer and better practice is to have the record in a criminal prosecution affirmatively show that the defendant was personally present at every step in or stage of the trial, but it will be held by an appellate court to be sufficient if it appears by necessary and reasonable implications from record entries that the defendant was present at all necessary "stages of the trial."

17. In a trial for murder, where it clearly appears from the transcript of the record that, on the application of the counsel for the defendant, the defendant then being present, the court directed a view by the jury of the second story of the county jail, that counsel for the defendant was present with the judge and jury during the view, during which it was discovered that the defendant was not present, whereupon the court ordered the jury to cease their view and immediately sent an officer for the defendant and, when the officer returned with the defendant, the view was resumed and continued, that no testimony was taken during the absence of the defendant, that no objection was made to the proceedings, and that nothing which could have been harmful to the defendant transpired during his absence while such view was being taken, that the view effected no conflicts in the evidence, and that the evidence, without reference to the view, fully

sustained the verdict, and no objection was made to the view proceedings until after the verdict, the judgment 'will not be reversed merely because the defendant was not present at the time when the jury began their view, but was not denied the privilege of being present.

18. A judgment of conviction will not be reversed on writ of error even if technical errors were committed in rulings on the admissibility of evidence or in charges given or refused or in other matters of procedure, where the evidence of guilt is clear and ample and no fundamental rights of the defendants were violated, and it appears from the whole record that such technical errors, if any, were not prejudicial to the defendants.

Writ of Error to Circuit Court for St. Lucie County; Jas. W. Perkins, Judge.

Judgment affirmed.

A. D. Penny, Fred Fee and M. K. Adcock, for Plaintiff in Error;

T. F. West, Attorney General, and C. O. Andrews, Assistant, for the State.

SHACKLEFORD, J.—Charles B. Kersey was indicted for the crime of murder in the first degree, tried before a jury, convicted of the crime of murder in the second degree and sentenced to confinement at hard labor in the State prison during the remainder of his natural life. Before taking up for consideration the errors which have been assigned and argued before us we think it advisable to state that the evidence adduced establishes the fact that Edith Kersey, for causing whose death by shooting her with a shot gun the defendant was placed on trial under an indictment, charging him with the crime of mur-

der in the first degree, was the lawful wife of the defend-
ant and they were living together at the time of Edith
Kersey's death as husband and wife, and had been so liv-
ing together ever since the consummation of their mar-
riage, during a period of about six weeks. The evidence
further establishes that Edith Kersey came to her death
from a wound in her head which was inflicted by the dis-
charge of a shot gun loaded with powder and small shot,
and that at the time of such discharge the deceased was
lying in bed in the home occupied by her and her husband,
the defendant. Upon these points the evidence is uncon-
tradicted.

The second and third assignments, which are argued
together, are as follows:

"II. Because of the admission, under the objection of
plaintiff in error, of the testimony of the witness, J. R.
Johnson, to the effect that, in his opinion, if the gun had
been fired from the position in which it was found, the
load or shot, would have ranged or gone straight into the
head of deceased and not inward and upward." ⋅

"III. Because the lower court, in passing upon the
admissibility of the evidence complained of, in assignment
of error number two, left it to the witness, J. R. Johnson,
to decide whether or not it was opinion evidence and
therefore admissible whereas that question should have
been decided by the court and not the witness."

The bill of exceptions discloses that, after Dr. Fred-
erick A. Grossman and W. T. Jones, the Sheriff of St.
Lucie County, had been introduced as witnesses on be-
half of the State and had testified, among other things,
as to the position in which the body of the deceased was
found and also as to its condition, J. R. Johnson was
called to the witness-stand by the State and testified that
he was County Judge of St. Lucie County and that he

held an inquest upon the body of Edith Kersey and proceeded to testify as to the position and condition in which he found the body and also to describe the room in which it was found and certain objects therein and their relative positions, including the bed upon which the body of the deceased was lying, a chair, a stick and a gun. The witness was then asked by the State, "If the gun had been fired from the position in which you found it, in what direction would that load necessarily have gone?" The defendant objected "on the ground that it calls for the opinion of the witness and a conclusion of a fact," stating, "Let the witness state the physical facts, and then let the jury draw those conclusions, the position of the gun, etc." The court overruled the objection, to which ruling the defendant excepted, and the witness then answered as follows: "The load would have gone straight in and this direction with reference to the head the load went in this way and lodged here and the barrel of the gun was pointing squarely towards the head." Thereupon the following proceedings took place: "By Mr. Adcock: If the Court please, we move the court to strike the answer of the witness upon the same ground that the objection was made upon, and that is that the witness is not stating physical facts and conditions there, but he is giving his opinions or conclusions from those facts. He ought to state facts and let the jury draw those conclusions from the facts themselves and it is an invasion of the province of the jury. By the Court: Are you stating your opinion, Judge Johnson, or a physical fact. By the witness: I am stating it upon—. By Mr. Adcock: I submit as to whether or not he is reciting his opinion is a question of law for Your Honor to decide from——. By the Witness: I an stating it upon this theory, if I were to shoot a gun direct at that post there that the load would go

straight in and if I would hold it in this angle it would strike in a glancing position. By the Court: I will deny your motion to strike and give you an exception."

In order to render our discussion of these two assignments the more readily intelligible, we would state that there were no eye-witnesses to the shooting and, as the defendant frankly says in his brief: "It was the theory of plaintiff in error that deceased committed suicide; that she pulled the chair (which was found lying on the floor upon its back near the bed) up near the bed, placed the stock of the gun in the bottom of the chair so as to have the proper range and so that she could hold it and reach it when she was lying down; and that she, with her left hand holding the barrel or muzzle of the gun to her head, with her right hand pushed the broom stick (which was found near the bed) against the trigger of the gun and discharged it."

It must be admitted that what has come to be known as the "Opinion Rule" in evidence has given the courts and text-writers much trouble. Prof. Wigmore devotes an entire Chapter to it. See Chapter LXV, beginning with Section 1917 on page 2541 in Vol. 3 of Wigmore's Evidence. In section 1926 he announces his conclusion as follows: "That the test of the Opinion rule is a flexible, a living one; that there is no fixed form of words, no mere shibboleth—such as the word 'opinion' conveys—this is the important aspect of the principle never to be lost sight of. The question must be asked on each occasion, Can the jury be fully equipped, by the mere recital of the data, to draw inferences?—in other words, Can *all* the data be *exactly* reproduced by mere testimonial words and gestures?" An interesting discussion of this vexed question will be found in Vol. 5 of Ency. of Ev., beginning on page 651, and numerous authorities are cited in

the notes. We take the following excerpt from page 657: "The admissibility of the opinions and conclusions of non-experts rests, as has been judicially declared, upon three necessary conditions which will be considered *seriatim* hereinafter, as follows: (1) That the witness detail to the jury so far as he is able, the facts and circumstances upon which his opinion is based, in order that the jury may have some basis by which to judge of the value of the opinion; (2) that the subject-matter to which the testimony relates cannot be reproduced and described to the jury precisely as it appeared to the witness at the time; and (3) that the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding." Also see Commonwealth v. Sturtivant, 117 Mass. 122, 19 Amer. Rep. 401, wherein Mr. Justice ENDICOTT uses the following language: "The exception to the general rule that witnesses cannot give opinions, is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning; but includes the evidence of common observers, testifying to the results of their observation made at the time in regard to common appearances or facts, and a condition of things which cannot be reproduced and made palpable to a jury. Such evidence has been said to be competent from necessity, on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper administration of justice. Nor is it a mere opinion which is thus given by a witness, but a conclusion of fact to which his judgment, observation, and common knowledge has led him in regard to a subject matter which requires no special learning or experiment, but which is within the knowledge of men in general."

In Hardy v. Merrill, 56 N. H. 227, text 241, Mr.

Chief Justice FOSTER thus announced his conclusion: "And it seems to me quite unnecessary and irrelevant to crave an apology or excuse for the admission of such evidence, by referring it to any exceptions (whether class-ified, or isolated and arbitrary) to any supposed general rule, according to the language of some books and the custom of some judges. There is, in truth, no general rule requiring the rejection of opinions as evidence. A general rule can hardly be said to exist, which is lost to sight in an enveloping mass of arbitrary exceptions.

But if a general rule will comfort any who insist upon excluding and suppressing truth, unless the expression of the truth be restrained within the confines of a legal rule, standard, or proposition, let them be content to adopt a formula like this: *Opinions of witnesses derived from observation are admissible in evidence, when, from the nature of the subject under investigation, no better evidence can be obtained.* No harm can result from such a rule, properly applied. It opens a door for the reception of important truths which would otherwise be excluded, while, at the same time, the tests, of cross-examination, disclosing the witness's means of knowledge, and his intelligence, judgment, and honesty, restrain the force of the evidence within reasonable limits, by enabling the jury to form a due estimate of its weight and value." Also see 5 Ency. of Ev. 669; Elsner v. Supreme Lodge, Knights and Ladies of Honor, 98 Mo. 640, 11 S. W. Rep. 991; Indiana, B. & W. R. Co. v. Hale, 93 Ind. 79.

This court has several times been confronted with this question. In Mann v. State, 23 Fla. 610, 3 South. Rep. 207, we held: "The opinion of a witness, except in expert testimony, is not legitimate evidence, as to any matter that may be reproduced before the jury by a witness, it being the province of the jury to form their own opin-

ion on facts of common experience, uninfluenced by the opinion of any witness on these facts—especially where such opinion is sought on facts given in the testimony of another witness." Also see Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410, 89 Amer. St. Rep. 237; Jones v. State, 44 Fla. 74, 32 South. Rep. 793; Alford v. State, 47 Fla. 1, 36 South. Rep. 436. The following statement from 5 Ency. of Ev. 662, would seem to be a correct conclusion: "Whether or not non-expert testimony, such as is here under consideration, is admissible is a question for the court, and in determining such question and in applying the rules which govern the admission of such testimony the court may exercise its discretion." As we held in Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395, "Courts of Justice exist for the administration and furtherance of Justice and in the conduct of trials generally much must be left to the discretion of the trial judge." We have adhered to this holding in a number of subsequent opinions. In Adams v. State, 55 Fla. 1, text 3, 46 South. Rep. 152, we said: "The object of a trial is to approximate justice as nearly as possible, and unless it appears that some injustice or wrong has been done a defendant this court will not interfere with the action of the trial court." In the instant case Dr. Frederick A. Grossman, the first witness on behalf of the State, had testified that he made an examination of the body of Edith Kersey after her death and that the shot which made the wound "entered the skull at an acute angle from below towards the body" and went "upward and inward," and that the shot which caused the wound did not come out. A rigid cross-examination of the witness failed to bring about any change in his testimony in this respect. After W. T. Jones, the Sheriff, had testified on behalf of the state, J. R. Johnson, the County Judge, who held the

inquest, was called to the witness stand by the State and testified, as we have already said, as to the position and condition in which he found the body, also describing the room in which he found the body and certain physical objects therein and their relative positions, including the bed upon which the body of the deceased was lying, a chair, a stick and a gun. The witness also testified that he probed the wound and proceeded to describe it, stating that the shot went in at a point on the head, which he indicated, and "ranged upward and lodged in the top point of the head." The witness was examined at considerable length and reproduced all the data, including the relative positions of the body, the bed, the gun, the chair and the stick in the room, in so far as he could do so by words and gestures, but it is obvious that such data could not be *exactly* so reproduced. This being true, in accordance with the test suggested by Prof. Wigmore in the third volume of his work on Evidence, section 1926, which we have quoted above, as well as under the other authorities which we have cited, including our own decisions, we are of the opinion that no reversible error has been made to appear to us in either of the rulings of which complaint is made. We call attention to the difference in the question propounded in the instant case and the questions propounded in the cases of Mann v. State, *supra;* Jones v. State, *supra;* Lassiter v. State, 64 Fla. 337, 59 South. Rep. 894, upon which the defendant relies, also the variance in the attendant facts and circumstances. As we said in Alford v. State, 47 Fla. 1, text 8, 36 South. Rep. 436, "Ordinary witnesses may give their opinions in connection with the facts upon which they are founded when the matter to which the testimony relates can not otherwise be reproduced or made palpable to the jurors that they may draw correct

or intelligent conclusions therefrom." We must hold that these two assignments have not been sustained.

The fourth assignment is as follows: "Because the lower court over objection of plaintiff in error, permitted the witness, George Long, to state that there were no powder burns upon the face of deceased."

George Long, a State witness, testified that he was a member of the coroner's jury that held the inquest and that he made an examination of the body of Edith Kersey and described its appearance and condition, going into details about the wound. We copy the following portion of his direct examination: "Q. What did you see on the sheets there if anything? A. Nothing but blood. Q. Have you had any experience in shooting guns? A. A little. Q. What was the color of the flesh of that wound on the front side of it? A. Around the gash? Q. Yes. A. It was just like the rest of her flesh. Q. Did you find anything there that did not belong there? A. No, sir, not that I know of. Q. Was there or was there not any indications of powder burns there? By Mr. Adcock: We object to that because it is leading. The witness has stated the color of the flesh there, and because it is leading, and also because it calls for the opinion of the witness. He states the color of the flesh. By the Court: Did you make a thorough examination of the wound? A. Yes sir. Q. From your examination made of the wound could you tell whether or not there was any powder burns on the flesh? By Mr. Adock: To which we interpose the same objection. By the Court: Objection is overruled. Exception is noted. By the witness: No sir, I did not see any powder burns at all."

It will be observed that the question to which the objection interposed was overruled and upon which ruling this assignment is founded was, "From your examina-

tion made of the wound could you tell whether or not there was any powder burns on the flesh?" This question was a mere preliminary question and, under the repeated rulings of this court, was not open to objection. Ortiz v. State, 30 Fla. 256, 11 South. Rep. 611; Dickens v. State, 50 Fla. 17, 38 South. Rep. 909; Golden v. State, 54 Fla. 43, 44 South. Rep. 948. No motion was made to strike out the answer. As we held in Ortiz v. State, *supra*, "Where a question to a witness is not improper in itself, but the answer presents evidence which is illegal or objectionable on any known ground, the proper practice is a motion to strike it out and have the jury directed not to consider it, the movant specifying his objection to the evidence with like particularity as in objecting to questions." Also see Schley v. State, 48 Fla. 52, 37 South. Rep. 518. It would seem that the answer of the witness to the question did not present any illegal or improper testimony. See the reasoning and authorities cited in our discussion of the second and third assignments. Also see Gantling v. State, 40 Fla. 237, 23 South. Rep. 857.

We now reach the fifth assignment: "Because the lower court, by his attitude and remarks, and by his action in having the Court Stenographer to repeat the testimony of the witness, Everett Hamilton, to the jury, gave undue prominence and emphasis to the testimony of said witness, Everett Hamilton."

The bill of exceptions shows that Everett Hamilton, a State witness, was a boy eleven years of age, who gave in his testimony in such a low tone that the trial judge, apprehending that it might not be audible to the jury, asked the jury if they could hear the witness, to which question one of the jurors replied, "No, sir, not very well." The following proceedings then occurred: "By Mr. Jones: We had better have the testimony read to

them. The testimony given by the witness was then read by the Reporter to the jury. By Mr. Adcock: If. the court please we want to preserve an exception to the action of the court in having this testimony repeated to the jury; it gives undue prominence. By the Court: I wish you would have made an objection before we started; I could have considered the objection. By the Court: Do you wish to have it stricken? Counsel: It cannot be stricken now. By the Court: Have you any motion to make? By Mr. Adcock: I have no motion I can make. By the Court: Little man, you heard that read over, did you understand what the stenographer read over, you heard him read that did you? A. Yes sir. Q. Did he read it as you had stated it? A. Yes sir. By the Court: Exception is noted. I refuse to strike the evidence. By Mr. Jones: I understand the reason of reading it was because the jurors had not distinctly heard it. By the Court: Yes sir, it was read at the request of the jury."

Several times subsequently the trial judge asked the jury if they could hear the witness, and the witness was requested to "talk up." The stenographer's notes are not shown to have been further read to the jury, but the last time the court asked the jury if they could hear the witness, the following transpired: "By Mr. Adcock: May it please the Court, we do not care for this testimony, but we want to make an objection to the action of the court in putting this before the jury in such an emphatic way, the jury might attach some importance to your asking them if they hear— By the Court: Do you think that the jury will attach some importance to the court asking them if they can hear? I want the jury to hear. Gentlemen of the jury, I want you to distinctly understand that I want to leave no impression with you of my own anxiety in this except for you to hear the testimony of the

witness and I have asked you to tell me at any time if you do not hear so that the witness will speak distinctly so that you can hear all of the testimony and I am going to give the gentleman an exception to my asking the jury to tell me whether or not they hear."

No error is made to appear here. The witness was of tender years and inexperienced in court proceedings, doubtless excited and perhaps somewhat frightened. It was important for the proper administration of justice that the jury should hear his testimony. See Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395, and Adams v. State, 55 Fla. 1, 46 South. Rep. 152, which we have previously cited. Also see our discussion and holding in Barton v. State, 72 Fla. 408, 73 South. Rep. 230.

The sixth assignment is: "Because the lower court denied the motion of plaintiff in error, to strike the testimony of the witness, Everett Hamilton, to the effect that he had previously' made statements out of court to third parties consistent with those made by him in court upon the witness stand."

The bill of exceptions shows the following, the State Attorney examining the witness: "Now Everett has Mr. Parker, this gentleman here right there or me drilled you as to what you should say on this stand, or are you telling the things you saw at that time? A. Well I am stating what I saw. Q. Stating what you saw? A. Yes sir. Q. Who did you first tell about that what you say if you remember? A. I do not remember—Well I remember telling it at Quay of course— Q. Telling it at Quay? A. Yes sir, and I have told my brothers. Q. Which brother was that? A. Well I have told both of them part of it. I never have brought it all in. Q. But you told them about what you have told to this jury to-day is that right? A. No sir. Q. I say you have told part to

one and part to the other what you told sitting in that chair to-day? A. Yes sir. By Mr. Adcock: We want to object to that if the court please, and we move to strike the answer proving by the witness his prior statements consistent statements made to bolster up his testimony and it is clearly inadmissible, we move to strike that testi-mony from the record. By the Court: The motion is denied. Exception is noted." No error appears here. See Putnal v. State, 56 Fla. 86, 47 South. Rep. 864, and McMillan v. Reese, 61 Fla. 360, 55 South. Rep. 388. We will add that this witness was subjected to a rigid cross-examination of which the defendant had the full benefit.

The seventh assignment is: "Because the lower court, in passing upon the admissibility of the testimony of the witness, J. T. McCall, as to an alleged confession of plaintiff in error, refused to determine the question of fact as to whether said alleged confession was freely and voluntarily made." This assignment does not call for any extended discussion. The trial court did not refuse to determine whether or not the confession of the defend-ant was freely and voluntarily made, but after the witness had testified as to the facts and circumstances under which the confession was made the court overruled the objections interposed by the defendant and permitted the witness to testify as to such confession and afterwards overruled the motion of the defendant to strike out such testimony. See Thomas v. State, 58 Fla. 122, 51 South. Rep. 410, and McDonald v. State, 70 Fla. 250, 70 South. Rep. 24.

The twelfth assignment is: "Because the lower court, over the objection of plaintiff in error, excluded the testi-mony of plaintiff in error to the effect that the deceased had stated to him just previous to the time that her body

was found, that she had taken poison for the purpose of committing suicide."

The defendant took the witness-stand in his own behalf and during his direct examination, after offering testimony as to what Dr. Grossman stated to the witness as to the result of his examination of the body of Edith Kersey, which was objected to by the State and the objection sustained, no exception being taken to such ruling, the following proceedings took place: "Q. Did, if at any time after Doctor Grossman was there to see your wife and during the week previous to the time her body was found, if she ever made a statement to you to the effect that she had taken poison, please state to the jury what that was. By Mr. Jones: If the conversation between the alleged conversation between the deceased and this man is to be permitted to go in I do not know where the range of evidence is limited. · It would be in the nature of attempting a self serving statement, what did she say to you before her death. Now then the State should be permitted to put in what she said to others in regard to the fight between this defendant and herself, which I am frank to admit are inadmissible, because they would be hearsay, now if the matters that he is inquiring into were res gestae and if they occurred at the time of the tragedy some exclamation something that she said then and there but not conversation that may have occurred between husband and wife prior would not be admissible under the old rule that communications where marital relation exists were improper. Why because it might be a violation—because there might be that intimate relation which prevents and forbids under the law to set aside the veil of marital communications. In this instance this is used for the purpose of bringing in a shielding statement to himself and under the circumstances I submit to the

court it is inadmissible. By Mr. Adcock: What we are offering to prove here is a statement made by the deceased that she had taken poison for a certain purpose. Now that is certainly not a self serving declaration upon the part of the defendant, he never made that statement. If we were attempting to prove some statement he made out of court that would be self serving, then that would be self serving but what we are attempting to prove is a statement made by the deceased and we are attempting to prove that by the evidence of the defendant. By the Court: A statement made by the deceased to the defendant her husband. By Mr. Adcock: Yes and we submit that to prove our theory of suicide that we can offer in evidence any statement, threat or attempt, which the deceased made or any statement which she made to anybody showing that she did have such a purpose. By the Court: The objection is sustained. Exception is noted."

We have examined all of the authorities cited by the respective parties, but shall not undertake an analysis or discussion of them. If the indictment had charged the defendant with the murder of his wife by the administration of poison to her, we think that the proffered testimony as to the statements of the deceased might have been admissible. However, the indictment did not so charge and the uncontradicted proofs shows that the deceased came to her death from a wound inflicted by a discharge from a shot gun. We are also of the opinion that the evidence establishes that it was a practical impossibility for the deceased to have committed suicide by shooting herself. It necessarily follows that no reversible error was committed in excluding the proffered testimony. Among the authorities cited are the following to which we think it well to refer: Commonwealth v. Trefethen, 157 Mass. 180, 31 N. E. Rep. 961, 24 L. R. A, 235; State

v. Beeson, 155 Iowa, 355, 136 N. W. Rep. 317, Ann. Cas. 1914 D 1275; to which is appended an exhaustive note; Nordan v. State, 143 Ala. 13, 39 South. Rep. 406; Boyd v. State, 14 Lea (Tenn.) 161.

The thirteenth assignment, which is argued in connection with the twelfth, is as follows: "Because the lower court erred in refusing to permit the plaintiff in error to testify to an attempt upon the part of deceased to commit suicide a few days prior to her death."

This assignment has no basis in the record, as the bill of exceptions does not disclose any offer on the part of the defendant "to testify to an attempt upon the part of deceased to committ suicide a few days prior to her death" and the refusal of such testimony by the court. We also refer to our discussion of the immediately preceding assignment.

The fourteenth assignment is as follows: "Because the lower court erred in refusing to give in charge plaintiff's in error request number two, which was as follows: 'If defendant picked the gun up to kill a chicken and accidentally dropped it and it accidentally went off and killed deceased, the defendant would not be guilty of murder as charged in the indictment and the jury should return a verdict of Not guilty.' "

The only possible basis for this requested instruction in the bill of exceptions is the testimony of J. T. McCall, a State witness, who testified that he was a deputy sheriff and that the defendant made a confession to him in which he stated that he did kill his wife, that he was going to kill a chicken which he saw out of the window and stepped back and got the gun and "when I did I dropped it and it killed her." The defendant postively denied ever having made any such statement to McCall. As the court fully instructed the jury in the general charge upon

the law of homicide in the different grades and what the burden was which rested upon the State, and there was no exception to any portion of such charge, we are warranted in assuming that the law was correctly stated. This assignment has not been sustained.

The fifteenth and sixteenth assignments are argued together and are as follows:

"XV.   Because the record does not show that plaintiff in error was present in court either in the forenoon or afternoon sessions of court upon the day of October 17th, 1916, at which time he was being tried for a capital offense."

"XVI.    Because the record does not show that plaintiff in error was present in court upon the afternoon of October 18th, 1916, at which time he was being tried for a capital offense."

There is no occasion for any extended discussion of the question presented by these two assignments, as the matter has often been before this court and thoroughly treated.    In the case of Holton v. State, 2 Fla. 476, we held:  "During the whole of the trial of a capital case, the prisoner has a right to be, and must be, present.   This is a settled and well established principle of criminal law; and this principle is violated by sending the charge of the court to the jury, if such a step is taken in the absence of the prisoner.

"The prisoner in a capital case must be personally present during the whole of the trial, and at every step taken in the cause. He has the right to discuss questions both of law and fact—and if, in any stage of the trial, any proceeding is had which he has been deprived of such right, it is the denial of a right which the Constitution guarantees to him.   At every stage of the proceedings, he must have an opportunity of coming into court,

and being heard.  If any other course is pursued, and he
is convicted, it cannot be said to be 'by due course of
law.' "   We have consistently adhered to this holding in
subsequent decisions.   In Gladden v. State, 12 Fla. 562,
text 577, we repeated the holding in Holton v. State,
*supra*, and stated that "We do not propose to examine
the cases upon the subject."   In Blocker v. State, 60 Fla.
4, 53 South. Rep. 715, we again had occasion to consider
the question and referred to a number of prior decisions.
It is undoubtedly essential that a defendant in a prosecu-
tion for a felony should be personally present at every step
in or stage of the trial and, as we said in Blocker v. State,
*supra,* text 7, "that such facts appear by the record proper
as a perpetual memorial that due process of law was ob-
served and accorded to the accused in the trial."   The
better practice is to have the  record affirmatively show
that the accused was personally presented at every step
in or stage of the trial, but, as we have held in McCoy
v. State, 40 Fla. 494, 24 South. Rep. 485, "It is sufficient
if it appears by necessary and reasonable implication
from record entries that the defendants and the jury
were present at all necessary 'stages of the trial.' "   In
the instant case the record not only does not show that
the defendant was absent at any step in or stage of his
trial, but we think that it appears by necessary and rea-
sonable implications from the entries therein that the
defendant was personally present at all necessary "stages"
of the trial.

The seventeenth assignment is:   "Because plaintiff
in error was not present when the jury, together with the
trial judge, and officers of court, went to view and did
view the upper or second story of the county jail."

We find that the record discloses that the defendant
"made a motion that the jury be allowed to visit the jail

to inspect same with reference to certain testimony offered in this cause," which motion was granted "and thereupon the court, jury, attorneys, bailiff and sheriff visited jail. The bill of exceptions discloses that the following affidavit was presented in connection with the motion for a new trial.

"State of Florida,    }
County of St. Lucie. }    ss.

"Personally appeared before me, Loyce D. Hackett, a Notary Public in and for the State of Florida at Large, A. D. Penney and M. K. Adcock, who being duly sworn say: That they are the attorneys for the defendant in the case of State vs. Charles B. Kersey, and defended him in the Circuit Court of the Seventh Judicial Circuit of Florida in and for St. Lucie County, at the fall term of said Court, A. D. 1916, affiants state that, during the progress of above mentioned trial, the court upon motion of defendant, ordered the jury to view the upper or second story of the County Jail and the jury, together with all of the attorneys, the court, clerk and officers, left the court house for that purpose and went to said jail, and while viewing the same it was discovered that defendant was not present, whereupon the court ordered the jury to cease their view and immediately sent an officer for defendant and, when the officer returned with defendant, the view was resumed and continued." While this was an irregularity, it does not constitute reversible error. See Haynes v. State, 71 Fla. 585, 72 South. Rep. 180, wherein we held: "Where, in a trial for murder, it clearly appears from the record that on the application of the counsel for the defendant, the defendant being present, the court directed a view by the jury of the place where the homicide was committed, that counsel for the

defendant was present with the judge during the view, that no testimony was taken, that no objection was made to the proceedings, that nothing that could have been harmful to the accussed transpired during the view, that the view affected no conflicts in the evidence and that the evidence, without reference to the view, fully sustained the verdict, and no objection is made to the view proceedings until after verdict, the judgment of conviction will not be reversed merely because the defendant was not present at the view, but was not denied the privilege of being present." In the cited case the view was of the scene where the homicide occurred, while in the instant case the view was of the second story of the county jail in which the defendant was incarcerated, but there is no difference in the legal principles which control. We content ourselves with referring to our discussion in Haynes v. State, *supra*.

The only remaining assignment questions the sufficiency of the evidence to support the verdict. We have no hesitancy in declaring that we are of the opinion that the evidence adduced is amply sufficient to support the verdict rendered. See Rhodes v. State, 65 Fla. 541, 62 South. Rep. 653, and cases there cited. As we held in Seymour v. State, 66 Fla. 133, 63 South. Rep. 7, "A judgment of conviction will not be reversed on writ of error even if technical errors were committed in rulings on the admissibility of evidence or in charges given or refused or in other matters of procedure, where the evidence of guilt is clear and ample and no fundamental rights of the defendants were violated, and it appears from the whole record that such technical errors, if any, were not prejudicial to the defendants."

No reversible errors having been made to appear to us, the judgment must be affirmed.

TAYLOR, WHITFIELD and ELLIS, JJ., concur.

BROWNE, C. J., concurring.

I think the evidence is ample to justify the verdict; and on the doctrine laid down in Seymour v. State, 66 Fla. 133, 63 South. Rep. 7, quoted at the conclusion of the opinion in this case, I concur therein.