OTT, Judge.
Appellant was convicted of burglary, robbery, and sexual battery. We find merit in his contention that the trial court committed reversible error in permitting the state to present evidence, over appellant’s objection, of another sexual assault.
It has long been the rule in this state that evidence of an independent crime is inadmissible if its only purpose is to blacken the character of the defendant or suggest his propensity for criminal conduct. Williams v. State, 110 So.2d 654 (Fla. 1959). Where, as here, the identity of the defendant is a material issue, evidence of a collateral crime to which the defendant can be positively connected is relevant, but it is not admissible unless there is more than a mere general similarity between the two crimes. Davis v. State, 376 So.2d 1198 (Fla.2d DCA 1979). Accordingly, we must compare the details of the two crimes in order to determine whether that rule was violated here.
The victim of the sexual assault with which appellant was charged in the instant case was a 76-year-old woman who was unable to identify her assailant. She resided alone in an apartment complex for the elderly and appellant was employed there as a maintenance man. The victim testified that her attacker awakened her by tapping her shoulder, and he told her not to make any noise or movements, that he had a gun and would shoot her. He told her he wanted her diamonds and her money. He immediately taped her eyes with Scotch or masking tape or other sticky material, tore up a sheet from the bed and wrapped it *248 around her head. He tied her legs and coerced her into telling him where she kept her jewelry, diamonds, and money. After securing all her jewelry from her jewelry box, the money from her pocketbook and her wedding ring from her finger, he then proceeded to commit the sexual battery. She did not remember whether he said anything during the commission of the sexual battery. While tying her up and taking her jewelry and money, he talked and mumbled in a different voice from that employed in voicing a remorseful prayer after completion of the sexual battery. He told her he was in his 20s — “22, I think” — and had a wife and children. Another witness testified that the victim told him her assailant said he was 32 or 34 and had a wife and two children.
Medical experts established that there was no injury or marks of abuse on the victim other than from forcible sexual relations.
The victim of the other sexual battery was a 15-year-old female. Insofar as pertinent here, the testimony as to the collateral crime was as follows:
The victim testified she was out for a stroll on the beach about 9 p. m. A man casually approached her, suddenly grabbed her from behind, stuck a knife in her back, and told her that if she didn’t scream he wouldn’t hurt her. He led her up some steps, cautioned her not to look at him, put some tape like that used for bandages over her eyes, and told her he needed help. He then put her in a car and drove some distance to a vacant house, talked about needing to get away from the police and that he would leave her there — that he was using her as a hostage. He told her he was 42 years old and from Georgia.
When they reached the vacant house the abductor lit up a marijuana cigarette and gave it to the victim, which she shared with her abductor. He began to struggle with her and had to push the bandages back over her eyes a number of times. The bandages were a little sticky but would slip off her eyes. He told her he would leave her alone if she would turn over on her back. Then he cut a lamp cord with his knife and tied her arms up. He got a sheet or a curtain, ripped off a piece and wrapped it around her eyes, but did not tie it tight enough to keep it from sliding off her eyes. She saw him clearly several times and positively identified appellant as her assailant. She testified he hit and punched her several times and then raped her. After completion of the first sexual battery he took her outside into a field and told her that was where he had first intended taking her.
The victim stated she had on earrings and a necklace but her assailant made no effort to bother them. After the second assault (apparently in the field or woods outside), he began to insert his finger in her vagina which he stated was to clean her up — that he was 42 years old, had been through this before and knew what he was doing.
She said his voice was peculiar, changed a lot and sounded like that of a deranged person, spaced out on drugs or something. She thought the strange voice was intended to mislead her. Her assailant was not wearing a shirt.
The second victim’s testimony was followed by detailed testimony of the officer who investigated the collateral crime and arrested appellant therefor.
The state argues that there was more than “a mere general similarity” between the two crimes, as required by Duncan v. State, 291 So.2d 241 (Fla.2d DCA 1974). Those similarities are said to be (1) the assailant in both crimes admonished his victims not to scream or make any noise, (2) the eyes of both victims were taped and then wrapped with material torn from a sheet or a curtain, (3) both victims were tied up, (4) both victims were raped, (5) the assailant spoke in a strange voice to disguise his real voice, and (6) in each crime the assailant told each victim about himself — although his story varied on the two occasions. The state asserts that those similarities are so unique as to point to only one person — the appellant.
We think that the similarities between the two cases are those that are apt to *249 appear in any rape case and that they fall far short of furnishing a basis for inference that appellant was the attacker.
Accordingly, we REVERSE the conviction of appellant and REMAND the case for a new trial on all counts.
SCHEB, C. J., and RYDER, J., concur.