SCHWARTZ, Judge.
On motion of the defendant, who was accused of being the “Bird Road rapist,” eight informations which charged him with separate crimes of sexual battery with the use of a firearm were consolidated for trial. The jury found him guilty of seven. On this appeal from the resulting convictions and consecutive sentences to life imprisonment, Diaz claims error only in the exclusion of evidence that another, allegedly similar [1] criminal offense occurred when he was already in jail. We affirm.
*69 It is not necessary to determine in this case whether, as the defendant contends, we should adopt a “liberal” view of the admissibility of so-called “reverse Williams rule”[2] evidence that a defendant did not commit a crime supposedly like the one with which he is charged. This is because, even under the authorities which exemplify that approach, e.g., Commonwealth v. Murphy, 282 Mass. 593, 185 N.E. 486 (1933); State v. Bock, 229 Minn. 449, 39 N.W.2d 887 (1949); State v. Garfole, 76 N.J. 445, 388 A.2d 587 (1978),[3] it is apparent that the trial judge did not abuse his discretion[4] in concluding that there was no unique or distinctive feature common to the various incidents in question[5] and that Diaz’s non-involvement in the later offense was therefore irrelevant to the only pertinent issue, whether he was guilty of those for which he was being tried.[6] State v. Garfole, 80 N.J. 350, 403 A.2d 888 (1979); see generally, Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Matire v. State, 232 So.2d 209 (Fla. 4th DCA 1970); cf. Drake v. State, 400 So.2d 1217 (Fla.1981);[7] White v. State, 407 So.2d 247 (Fla.2d DCA (1981).[8]
Affirmed.

. In fact, the points of similarity were both meager and commonplace. They consisted of the facts that the subsequent incident occurred in the same general Bird Road area and involved an approach to a woman by a man wielding a pistol who had physical characteristics and an accent very roughly equivalent to those described by some of the victims of the instant crimes.
On the other hand, the incident took place more than eight months after the last of the crimes involved in' the trial. Moreover, since the offender was frightened away before anything else occurred, it was not even demonstrated that a sexual assault had been so much as intended. Finally, and most significantly. there was no showing of the rather unusual use of blinking headlights to attract the victim’s attention, which was a feature of seven of the offenses charged. Diaz argues that this is insignificant because the eighth incident did not bear this distinctive characteristic. This “eighth” charge was tried with the other seven, however, not because it would have been otherwise admissible in a trial of the “headlight” cases under the Williams rule, but because the defendant himself moved to consolidate them all in a single trial. This was obviously a strategic move which, although it backfired against him, was calculatedly based on the jury’s supposed unwillingness to believe that the same person, Diaz, committed the dissimilar acts in question (as well as being the subject of widely *69 disparate initial descriptions by the victims). The doctrine of invited error precludes Diaz from affirmatively, and for his own purposes, seeking the introduction of a “non-distinctive” crime in the state’s case and then bootstrapping that evidence into the introduction on his behalf of offenses which were otherwise similarly irrelevant, merely because they were perpetrated by someone else. See, White v. State, 348 So.2d 1170 (Fla. 3d DCA 1977).

. Williams v. State, 110 So.2d 654 (Fla.1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).

. Compare, e.g., People v. Edmond, 200 Cal.App.2d 278, 19 Cal.Rptr. 302 (1962); Dorsey v. State, 620 P.2d 1261 (Nev.1980); People v. Velillari, 84 Ill.App.3d 333, 39 Ill.Dec. 713, 405 N.E.2d 466 (1980), cited by the state.

. Commonwealth v. Murphy, supra; State v. Bock, supra; see generally, Kersey v. State, 73 Fla. 832, 74 So. 983 (1917); Ashley v. State, 370 So.2d 1191 (Fla. 3d DCA 1979).

. See note 1, supra.

. We note also that the evidence was excluded on the state’s in limine motion to do so and that the defendant did not again proffer the testimony during his case in the trial itself. See Swan v. Florida Farm Bureau Ins. Co., 404 So.2d 802 (Fla. 5th DCA 1981) (failure to object during trial to evidence ruled admissible on motion in limine precludes appellate review); Jones v. State, 360 So.2d 1293, 1296 (Fla. 3d DCA 1978) (failure to renew objection to admission of evidence which was subject of unsuccessful motion to suppress precludes appellate review).

. At 400 So.2d 1219, the court said:
Williams v. State holds that evidence of similar facts is admissible for any purpose if relevant to any material issue, other than propensity or bad character, even though such evidence points to the commission of another crime. The material issue to be resolved by the similar facts evidence in the present case is identity, which the State sought to prove by showing Drake’s mode of operating.
The mode of operating theory of proving identity is based on both the similarity of and the unusual nature of the factual situations being compared. A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations. Given sufficient similarity, in order for the similar facts to be relevant the points of similarity must have some special character or be so unusual as to point to the defendant. The only similarity between the two incidents introduced at trial and Reeder’s murder is the tying of the hands behind the victims’ backs and that both had left a bar with the defendant. There are many dissimilarities, not the least of which is that the collateral incidents involved only sexual assaults while the instant case involved murder with little, if any, evidence of sexual abuse. Even assuming some similarity, the similar facts offered would still fail the unusual branch of the test. Binding of the hands occurs in many crimes involving many different criminal defendants. This binding is not sufficiently unusual to point to the defendant in this case, and it is, therefore, irrelevant to prove identity.

.In White, it was stated:
The state argues that there was more than ‘a mere general similarity’ between the two crimes, as required by Duncan v. State, 291 So.2d 241 (Fla. 2d DCA 1974). Those similarities are said to be (1) the assailant in both crimes admonished his victims not to scream or make any noise, (2) the eyes of both victims were taped and then wrapped with material torn from a sheet or a curtain, (3) both victims were tied up, (4) both victims were raped, (5) the assailant spoke in a strange voice to disguise his real voice, and (6) in *70 each crime the assailant told each victim about himself — although his story varied on the two occasions. The state asserts that those similarities are so unique as to point to only one person — the appellant.
We think that the similarities between the two cases are those that are apt to appear in any rape case and that they fall far short of furnishing a basis for inference that appellant was the attacker.